Eileen KAPPS, Geraldine Boyland, Alice Costello, Joan Ford, Joanne Karl, and Margaret Riley, individually and on behalf of others similarly situated, Plaintiffs,

v.

Brian J. WING, as Commissioner of the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance, Jason A. Turner, as Commissioner of the New York City Department of Social Services, and Jerry Cammarata, as Commissioner of the New York City Department of Youth and Community Development, Defendants.

No. 98 CV 7734 NG.

United States District Court, E.D. New York.

Sept. 19, 2003.

Peter Vollmer, Jericho, NY, for plaintiff.

Jose Luis Velez, William S.J. Fraenkel, New York City, for defendant.

## OPINION AND ORDER

GERSHON, District Judge.

Plaintiffs Eileen Kapps, Geraldine Boyland, Alice Costello, Joan Ford, Joanne Karl, and Margaret Reilly bring this class action on behalf of themselves and other similarly situated New York City residents who applied to the New York City Department of Social Services ("DSS") and New York City Department of Youth and Community Development ("DYCD") for regular Low Income Home Energy Assistance Program ("HEAP") benefits anytime since November 17, 1997 and were not provided with notification of eligibility and benefit amount within the time required by state regulations; a benefit determination notice that included budgetary information explaining how financial eligibility and benefit amount were calculated where eligibility was based on a budget calculation; and/or 60 days in which to request a fair hearing to challenge a benefit determination. Plaintiffs allege violations of their due process rights, of their right to equal protection of the law, and of federal and state law by the defendant Commissioners of DSS, DYCD, and the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance ("OTDA") as a result of defendants' policies and practices relating to the HEAP program.

Plaintiffs now move for class certification and for summary judgment on their claims. Defendant Commissioners of DSS and DYCD oppose plaintiffs' motion for summary judgment and object to the scope of plaintiffs' proposed class. Defendant Commissioner of OTDA opposes plaintiffs' motion for class certification and moves for summary judgment on each of plaintiffs' claims.

### Facts

The following facts, unless otherwise indicated, are undisputed.

HEAP is a federal block grant program designed to assist low income households in meeting their heat-related home energy costs ("regular HEAP benefits") and to intervene in energy crises to ensure that such households do not suffer any interruption in heat energy ("emergency HEAP benefits"). The HEAP program is funded by Congress on an annual basis and is administered by the United States Department of Health and Human Services ("HHS"). States which choose to participate in the HEAP program must submit an annual state plan to HHS to ensure that their federal HEAP allocation will be distributed in accordance with all applicable federal requirements. 42 U.S.C. § 8624(a-c). Participating states have significant discretion to determine HEAP eligibility; however, their state plan must

indicate that HEAP benefits will be distributed first to vulnerable households with the lowest incomes and the highest energy costs in relation to their income level. 42 U.S.C. § 8624(b)(5) and (c)(1)(B). Participating states are further required to target HEAP allocations to public assistance households and to non-public assistance households whose incomes are less than 150% of the federal poverty level or 60% of that state's median household income. 42 U.S.C. § 8624(b)(2)(A), (B), and (b)(3). Federal law requires that applicant households must be notified in writing of participating states' eligibility determinations and must be provided an opportunity to challenge a state's failure to process an application "with reasonable promptness," or its denial of benefits, through an administrative fair hearing. 42 U.S.C. § 8624(b)(5) and (b)(13).

In New York State, the annual HEAP state plan is prepared by OTDA and is submitted to the Governor for approval. N.Y. Soc. Serv. Law § 97[1]. OTDA supervises and administers the annual HEAP State plan through New York State's 58 local social service districts. OTDA is also charged with ensuring that each district administers the HEAP program in compliance with federal and state law. N.Y. Soc. Serv. Law §§ 20, 34, 97[2]; 18 N.Y.C.R.R. § 393.1. DSS is the local social service district for New York City. DYCD is a community-based program that contracts with DSS to receive HEAP applications and certify HEAP eligibility.

States participating in the HEAP program receive an annual block grant based on a complex formula that is applied to the total amount of federal funds appropriated for the program. The amount of that grant is unrelated to the number of persons who meet the eligibility requirements for HEAP in any given state during any given year. Once a participating state ex-hausts its federal HEAP grant for any particular year, no additional funds are available to supplement that grant, unless Congress appropriates additional funds for the program. States are not obligated to provide HEAP benefits to eligible households once their annual federal grant is exhausted, nor has New York State chosen to take on that fiscal burden. *See* N.Y. Soc. Serv. Law § 97. New York Social Services Law specifically provides that "no person … shall be certified as eligible for and entitled to receive said home energy assistance if no federal funds are available." N.Y. Soc. Serv. Law § 97[2].

Unexhausted portions of each state's annual HEAP grant revert to the federal government at the close of the fiscal year. A state may, however, elect to "carry over" up to 10% of its annual HEAP grant to the following year. In the three program years spanning November 17, 1997 to September 8, 2000, New York State has carried forward unspent funds ranging in amount from $3.4 million in the 1997–1998 program year to $15 million in the 1999–2000 program year.

Federal law also places a 10% cap on the amount of each year's HEAP grant that may be spent for the administration of the HEAP program. 42 U.S.C. § 8624(b)(9). The proportion of New York State's annual HEAP grant which could have been allocated to administrative costs under these guidelines ranged in amount from $11.9 million in the 1997–1998 program year to $13.9 million in the 1999–2000 program year.

Each program year, OTDA designates a specific time period during which local social service districts must receive applications for regular HEAP benefits. 18 N.Y.C.R.R. § 393.3(a). Households containing members who are eligible for public assistance, food stamps, or Supplemental Security Income benefits are cate-

gorically income eligible for HEAP benefits pursuant to 18 N.Y.C.R.R. § 393.4(c)(1)(i)-(iv). Eligibility for applicants who are not categorically income eligible is determined through a "point system" which takes into account each household's annual income, annual energy costs, statewide energy cost standards, each household's energy burden ratio, the presence of vulnerable family members, and each household's categorization in one of two income tiers. 18 N.Y.C.R.R. § 393.4(c)(2). New York State regulations require local social service districts to render an eligibility determination within 30 days of the filing of a signed and completed HEAP application. 18 N.Y.C.R.R. § 393.5(a). Written notice of an eligibility determination must be sent to each applicant household. 18 N.Y.C.R.R. §§ 358–2.2(a), 358–2.15, 358–3.3(c), and 393.5(a). State regulations further provide that applicants for HEAP benefits may request a fair hearing prior to the issuance of a determination notice if no notice has been issued within 30 days of the filing of a signed and completed application. 18 N.Y.C.R.R. § 393.5(c). Notice of this fair hearing right is not, however, included on application forms for HEAP benefits.

"Adequate notice," as defined by state regulations, includes "a copy of the budget or the basis for computation, in instances where the social service agency's determination is based upon a budget computation. This subdivision does not apply to actions taken involving HEAP benefits." 18 N.Y.C.R.R. § 358–2.2(a)(14). Current HEAP determination notices include a monetary amount of benefit award where eligibility has been found and, in the case of denial, a form identifying one of eight possible reasons for ineligibility, including "Your household's income is over HEAP eligibility limits."

Notices of HEAP eligibility include notice of an applicant's right to request a fair hearing and the procedures and time limits for doing so. 18 N.Y.C.R.R. § 358–2.2(a)(5) and (6). Section 22[4](a) of the New York Social Services Law provides a 60 day time period from the date of notice in which an applicant may request a fair hearing. State regulations provide that "a request for a fair hearing to review the denial of, the failure to act on an application for, or to dispute the adequacy of HEAP benefits must be requested no later than 60 days after the mailing of the notice; however, in no event may a hearing request be made more than 105 days after the district terminates the receipt of applications for the program year." 18 N.Y.C.R.R. §§ 358–3.5(b)(4) and 393.5(e). The latter provision is referred to as the 105 day rule. Current HEAP determination notices inform applicants of the existence of the 105 day rule, but do not provide information on the date upon which that rule will go into effect in that program year. HEAP determination notices also inform applicants of their right to review their case files and to request information on how eligibility has been determined as part of their fair hearing rights. A telephone number for more information is also provided in the section describing fair hearings.

According to plaintiffs' calculations, in the three program years spanning November 17, 1997 to September 8, 2000 over 600,000 determinations of HEAP eligibility were annually made in New York State. Less than 700 appeals of either regular or emergency HEAP determinations were reviewed through the fair hearing process for each of those three program years. Of the 1,688 hearings held in relation to HEAP determinations between January 1, 1996 and December 31, 2000, appellants prevailed in 55.3% of the cases.

The average processing time for HEAP applications in New York City in the 1997–1998 program year was 121.6 days. According to plaintiffs' calculations, during that same program year, 111,278 New York City households were not notified of an eligibility determination within the 30 days prescribed by state regulations; 76,035 New York City households received notices of determination that did not include budgetary information to explain how eligibility in their case had been calculated; and 14,523 New York City households were provided with less than 60 days in which to request a fair hearing as a result of a combination of late notification and the 105 day rule. Of these, over 5,000 New York City HEAP applicants were issued a determination notice more than 105 days after the close of the program year.

Plaintiffs in this case are all non-categorically income eligible applicants for regular HEAP benefits who reside in the New York City area. All six named plaintiffs applied for regular HEAP benefits on May 1, 1998, the last day of the 1997–1998 HEAP program year, at the offices of DYCD. All were issued determination notices awarding them benefits ranging in amount from $225 to S275. All received their determination notices more than 105 days after the submission of their applications and, therefore, more than 105 days after the close of the program year. The determination notices issued to each of the six named plaintiffs specifically stated that no fair hearing request would be granted 105 days after the close of the program year. No budgetary information on how eligibility was calculated was included in those notices. Each notice did, however, include a telephone number for inquiries and questions regarding the award of benefits. None of the six named plaintiffs attempted to request a fair hearing to appeal the HEAP determination.

Following the commencement of this lawsuit, DSS significantly revised the HEAP application process. DSS transferred oversight responsibility for the processing of HEAP applications to the Human Resources Administration ("HRA"), appointed an ombudsman to review compliance with state regulations, supplemented the workforce assigned to the various stages of processing HEAP applications, consolidated the determination and notice procedures, and implemented a telephone re-certification process for applicants over the age of 60 years. These reforms have significantly improved compliance with state regulations. In the 1998–1999 program year, following implementation of these reforms, the average processing time for a HEAP application in New York City fell to 56.33 days. In the 1999–2000 program year, the average processing time dropped again, to 21.27 days. DSS is currently in the midst of developing a new computer system to automatically calculate HEAP eligibility for applicants who are not categorically income eligible. The new system will allow DSS to issue determination notices that automatically include budgetary information on how eligibility is determined when eligibility is based on a budget calculation.

## I. Motion for Class Certification

Plaintiffs' proposed class consists of all New York City households who will apply or have applied for regular HEAP benefits at any time since November 17, 1997 who were not, or in the future will not be:

a.) mailed a notice of HEAP eligibility within the time specified in state regulations;

b.) mailed notice of HEAP eligibility which includes an explanation of how financial eligibility and benefit amount

were calculated when eligibility was based on a budget calculation; and

c.) afforded 60 days within which to request a fair hearing.[1]

A motion for class certification may be granted only if a court is "satisfied after a rigorous analysis, that the pre-requisites of Rule 23(a) have been satisfied." *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Rule 23(a) provides that:

> one or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs have clearly satisfied the numerosity requirement in this case. Thousands of New York City HEAP applicants were affected in each challenged calendar year by each of the challenged policies and practices of defendants. According to plaintiffs' calculations, in the 1997–1998 HEAP program year, over 111,000 New York City HEAP applicants did not receive notice of HEAP eligibility within the 30 day time period provided by state regulations; over 76,000 did not receive determination notices that included information on how eligibility was calculated;[2] and over 14,000 were provided with less than 60 days in which to request a fair hearing under the 105 day rule. These numbers are more than sufficient to satisfy the requirements of Rule 23(a)(1).

The commonality requirement has also been satisfied. Plaintiffs have alleged common deprivations of constitutional and statutory rights arising from a common statutory scheme.

The typicality requirement is satisfied where "the maintenance of a class action is economical and the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir.1993). The six named plaintiffs in this case are all non-categorically income eligible applicants for regular HEAP benefits who were not issued determination notices within the time period established by state regulations, were not provided with benefit determination notices that included budgetary information on how eligibility was calculated, and were not afforded 60 days in which to request a fair hearing as a result of a combination of late notice and the 105 day rule. Defendants have not raised any grounds for finding that the named plaintiffs' claims are not typical of those of the proposed class or for finding that the named plaintiffs have divergent interests from the proposed class. Accordingly, plaintiffs have satisfied the requirements of Rule 23(a)(3).

---

1. This description of plaintiffs' proposed class reflects amendments proposed by defendant Commissioners of DSS and DYCD in their opposition papers to plaintiffs' motion for class certification. Plaintiffs do not oppose these amendments. *See* Plaintiffs' Reply Memorandum of Law in Further Support of their Motion for Summary Judgment and Class Certification, 44.

2. Plaintiffs' calculations do not reflect how many of these 76,000 notices were issued to persons whose eligibility was based on a budget calculation. Nevertheless, plaintiffs have adequately demonstrated that a significant number of these notices pertained to such persons, and defendants have not disputed that point.

Finally, Rule 23(a)(4) requires a court to consider whether the named plaintiffs will fairly and adequately protect the interests of the proposed class. In order to meet this requirement the lead plaintiffs' attorney must be "qualified, experienced and generally able to conduct the proposed litigation" and the class representatives must be free of "interests antagonistic to those of the remainder of the class." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968). Both requirements are satisfied in this case. Plaintiffs' attorney is an experienced litigator with significant experience conducting class action litigation on behalf of public welfare program recipients. Defendants have not argued, nor does the record contain any grounds for finding, that plaintiffs will not vigorously pursue the litigation or adequately and fairly protect the interests of the proposed class. In sum, all four requirements of Rule 23(a) have been satisfied.

■ Federal Rule of Civil Procedure 23(b)(2) provides that "an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Defendant Commissioners DSS and DYCD do not dispute that plaintiffs' allegations meet the requirements of Rule 23(b)(2). However, defendant Commissioner of OTDA argues that class certification in this case is not necessary because, as a practical matter, proposed class members will benefit from any resolution in favor of the six named plaintiffs. Although there are cases, such as *Galvan v. Catherwood*, 324 F.Supp. 1016 (S.D.N.Y.1971), *aff'd sub nom, Galvan v. Levine*, 490 F.2d 1255, 1261–62 (2d Cir.1973), where courts have

exercised their discretion to deny class certification, the facts of this case and the position taken by defendant Commissioner of OTDA do not suggest that this court should deny class certification here. Defendant Commissioner of OTDA asserts that the claims of the named plaintiffs are, or may become, moot because they have received HEAP benefits equaling or exceeding the amount they were eligible to receive based on defendants' subsequent review of their HEAP applications. While, in the absence of a fair hearing or adjudication, there is no basis for this court to determine whether the named plaintiffs' claims are in fact moot, the defendant Commissioner's assertion of mootness points directly to the value of class certification in this case. *Alexander A. v. Novello*, 210 F.R.D. 27, 34 (E.D.N.Y.2002). Nor does the fact that only declaratory and injunctive relief is sought against governmental defendants preclude class certification. On the contrary, "there is a long line of cases in the Second Circuit allowing class actions that seek to enjoin governmental actions." *Id.* at 34 (citations omitted). *Accord Morel v. Giuliani*, 927 F.Supp. 622, 634 (S.D.N.Y.1995). *See also Barnett v. Bowen*, 794 F.2d 17, 22 (2d Cir.1986). Accordingly, class certification will be granted in this case.

## II. Motions for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 270 (2d Cir.1999). The burden then shifts to the non-movant to pres-

ent "specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Speculation, conclusory allegations, and mere denials are insufficient to raise a genuine issue of material fact. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998), *cert. denied*, 524 U.S. 911, 118 S.Ct. 2075, 141 L.Ed.2d 151 (1998).

Summary judgment may be granted to a non-movant where no material factual dispute exists and the non-movant is entitled to summary judgment as a matter of law. *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir.1996).

In this case, there are no material factual disputes.

## A. Due Process Claims

Since 1970, when it decided *Goldberg v. Kelly*, 397 U.S. 254, 261–62, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court has recognized that the provision of government benefits may give rise to a constitutionally protected property interest in persons entitled to receive them. Such a constitutionally protected interest arises in the context of government benefits where "existing rules or understandings that stem from an independent source such as state law ... secure certain benefits and support claims for entitlement to those benefits" and where the claimant "presently enjoys that entitlement, as opposed to expecting to receive it at some undefined time in the future." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiffs in this case contend that, as individuals presently eligible to receive regular HEAP benefits under the criteria set by New York State and federal law, they have a constitutionally protected property interest in HEAP benefits for any period during which federal funds remain available for the HEAP program.

HEAP is a federal entitlement program which requires participating states to distribute federal funds in accordance with specific eligibility guidelines established by the federal government. HEAP funds must be distributed first to vulnerable households with the lowest incomes and the highest energy costs in relation to their income level. 42 U.S.C. § 8624(b)(5) and (c)(1)(B). Participating states are required to target HEAP allocations to public assistance households and to non-public assistance households whose incomes are less than 150% of the federal poverty level or 60% of that state's median household income. 42 U.S.C. § 8624(b)(2)(A), (B), and (b)(3). New York Social Services Law § 97[2] provides that:

> those persons who qualify for low-income home energy assistance in accordance with federal and state requirements and standards promulgated by the department, shall be certified as eligible for and entitled to receive said home energy assistance. No person, however, shall be certified as eligible for and entitled to receive said home energy assistance if no federal funds are available for said purpose.

New York law thus clearly contemplates that persons who meet the federal and state HEAP eligibility requirements are entitled to such benefits for such time as federal HEAP funds remain available.

■ That this entitlement gives rise to due process rights is supported by a long line of cases in this Circuit finding that due process rights may attach to programs, like HEAP, which afford states significant discretion in establishing eligibility requirements for participation in federally-

funded programs and, like HEAP, are contingent on the availability of federal funding. *See, e.g., Brown v. Giuliani,* 158 F.R.D. 251, 266 (E.D.N.Y.1994); *Greenstein v. Bane,* 833 F.Supp. 1054, 1076–77 (S.D.N.Y.1993); *Meeker v. Manning,* 540 F.Supp. 131, 139 (D.Conn.1982). *See also Macauley v. Philadelphia Electric Co. v. Dept. of Public Welfare,* 1987 U.S. Dist. LEXIS 124, at *6–7 (E.D.Pa.1987). I therefore conclude that HEAP-eligible individuals have a constitutionally protected property interest in the receipt of HEAP benefits during any period for which federal HEAP funds remain available.

"Once a constitutionally protected property interest exists, procedures utilized to reduce or terminate the protected property interest must comport with the constitutional requirements of due process." *Ford v. Shalala,* 87 F.Supp.2d 163, 175–176 (E.D.N.Y.1999). The constitutional sufficiency of governmental procedures are analyzed under the tri-partite inquiry established by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). A court considering the type of due process rights which attach to an asserted property right must weigh: "the private interest that will be affected by the official action;" "the risk of erroneous deprivation of such interest through the procedures used;" and finally, the public interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The private interest at stake in this case is high. Plaintiffs, as eligible recipients for HEAP benefits, face potentially severe consequences should they be denied heating assistance. HEAP recipients "are among the poorest in America." Sen. Rep. No. 105–256, 105th Cong., 2d Sess. (1998). Deprivation of benefits to such impoverished citizens may result in the disconnec-

tion of utilities, frozen plumbing, fire, eviction, and ultimately, homelessness. *See* Sen. Rep. No. 103–251, 103rd Cong.2d Sess. (1994). As the Supreme Court recognized in *Memphis Light, Gas, & Water Div. v. Craft,* 436 U.S. 1, 18, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), "utility service is a necessity of modern life; indeed, the discontinuance of . . . heating, even for short periods of time, may threaten health or safety." The modest subsidy which HEAP provides, while not large in monetary terms, may make a crucial difference in the continuation of utility service for the impoverished families HEAP is intended to benefit.

The risk of erroneous deprivation in this case is also high. Pursuant to state regulation, HEAP determination notices do not include information on how eligibility is calculated. HEAP applicants therefore lack the information necessary to check the factual accuracy of their benefit determinations and to make informed decisions as to whether the determinations should be appealed. While specific rates of appeal are not available for New York City, the limited number of appeals of HEAP determinations filed annually in New York State and the high success rate of such appeals, provide some evidence pointing to the risk of erroneous deprivation for HEAP beneficiaries in New York City. According to plaintiffs' calculations, for the three program years spanning November 17, 1997 to September 8, 2000, over 600,-000 determinations of HEAP eligibility were annually made in New York State. Less than 700 appeals of either regular or emergency HEAP determinations were reviewed through the fair hearing process for each of those three program years. HEAP applicants therefore challenged their benefit determinations at a rate of less than 1%. Of the 1,688 hearings held in relation to HEAP determinations between January 1, 1996 and December 31, 2000,

appellants prevailed in more than half (55.3%) of the cases. In the 1997–1998 program year, DSS and DYCD issued HEAP determination notices to over 5,000 applicants more than 105 days after the close of the program year, thereby depriving those applicants of any access to a fair hearing. That same year, over 9,000 additional applicants were issued HEAP determination notices more than 45 days after the close of the program year, thereby denying them the full 60 days required by state law to timely request a fair hearing. It is reasonable to infer from these statistics that of the many cases in which appeals were not available, a significant number of applicants would have been successful should a fair hearing have been requested and granted. In addition, for those applicants who were provided with sufficient time in which to file an appeal, there is a significant risk that they either decided not to appeal or were hindered in their ability to do so successfully as a result of the absence of budgetary information in their determination notices. *See Ford,* 87 F.Supp.2d at 181; *David v. Heckler,* 591 F.Supp. 1033, 1044 (E.D.N.Y. 1984).

"Once plaintiffs demonstrate, as they have here, that the challenged government procedures pose an unreasonable risk of erroneous deprivation to a significant private interest, the burden shifts to the government to prove that implementation of additional or substitute procedural safeguards is not in the public interest." *Ford,* 87 F.Supp.2d at 182–83. Defendants have not borne that burden. Defendants' own regulations, promulgated pursuant to public hearings which involved significant input from the agencies charged with implementing the regulations, require the prompt processing of HEAP applications. As plaintiffs have demonstrated, inclusion of budgetary information in future HEAP determination notices will not impose an undue burden since defendants already prepare the requested calculations as part of the routine processing of HEAP applications and keep the calculations in each applicant's file. They simply do not provide these calculations to applicants. Moreover, DSS employees testified in deposition that alteration of the DSS computer system to automatically calculate eligibility and to automatically include eligibility calculations in determination notices can be accomplished in a fairly brief period of time (7–10 months) for a fairly minimal expense ($75,000.00). *See, e.g.,* Dep. of Sheldon Cantor, Director of Office Systems Development, DSS. A similar automated calculation system is currently being implemented in the other 57 local social service districts in New York State. Nor have defendants demonstrated that the 10% cap on HEAP administration costs imposed by federal regulations will preclude them from implementing the requested changes. The amount of New York State's annual HEAP grant which may be allocated to administrative costs under the federal guidelines is quite large, amounting to $11.9 million in the 1997–1998 program year and $13.9 million in the 1999–2000 program year. Significant levels of HEAP funds are carried over each year, indicating that allocation of a larger portion of the federal grant to administrative costs in any given program year would not result in fund exhaustion. Finally, the automation of eligibility calculations may well result in savings to the public fisc by avoiding unnecessary administrative appeals. Many other social service districts in New York State have welcomed efforts to automate HEAP calculations and to include budgetary information in HEAP determination notices on the specific

grounds that doing so will help ensure accuracy, reduce payment errors, reduce the amount of time and resources spent on performing manual calculations, and reduce the number of fair hearing requests. *See* Vollmer Decl., Exh. 53, "Automated HEAP Budgeting Survey Based on Responses from 51 Social Service Districts." Accordingly, this court concludes that the public interest is best served through the provision of additional due process safeguards to recipients of HEAP benefits.

■ Having established that plaintiffs are entitled to due process protection, the scope of that protection must now be determined. Due process rights include adequate and timely notice and a meaningful opportunity to be heard. *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 787, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). Plaintiffs contend that DSS and DYCD's current practice of issuing determination notices beyond the 30 day time period provided in state regulations violates their due process rights to timely notice and a meaningful opportunity to be heard. Nothing in the Due Process Clause, however provides support for plaintiffs' contention that the issuance of a notice beyond the 30 day time period will impinge on those rights. The availability of fair hearing relief to compel the processing of applications, pursuant to 18 N.Y.C.R.R. § 393.5(a), provides adequate procedural safeguards to ensure that applicants receive benefit determinations in a timely manner so long as, as discussed below, the 105 day rule is not implicated. Accordingly, plaintiffs cannot prevail on their claim that the failure to comply with state processing regulations violates their due process rights. Nor does the 105 day rule in itself violate the due process right to a meaningful opportunity to be heard. Under New York State's regulatory scheme,

even an applicant who submits a HEAP application on the final day of any given program year has adequate time in which to request a fair hearing prior to the close of the 105 day limitation period so long as his or her HEAP application is processed in a reasonably timely manner.

■ Plaintiffs also claim, however, that their due process right to a meaningful opportunity to be heard has been violated by the combined effect of DSS and DYCD's delays in processing applications and the 105 day rule. I agree. Defendants, while not required under the dictates of due process to provide determination notices within the specific time frame provided in state regulations, violate due process when delays result in the elimination of recourse to an administrative fair hearing. The availability of a fair hearing to compel the processing of an eligibility determination is not an adequate procedural safeguard in this context, because the availability of that type of fair hearing is also curtailed by the 105 day rule. Accordingly, this court concludes that, in order to adequately protect plaintiffs' due process rights, defendants must provide notice to HEAP applicants in a reasonably timely manner to assure that applicants have a reasonable time to request a fair hearing under the 105 day rule. Since the parties have not agreed upon what constitutes a reasonable time in which to request a fair hearing, this court will fix that time in accordance with the time frame established by the State legislature. Thus, defendants will be required to issue HEAP determination notices within 45 days of the close of the HEAP program year in order to provide applicants a reasonable time of 60 days from the date of notice to timely request a fair hearing under the 105 day rule.

Plaintiffs also challenge, on due process grounds, defendants' failure to include

budgetary information on how benefits are calculated in HEAP determination notices. HEAP eligibility, for non-categorically income eligible applicants, is determined through a complex "point system" which takes into account an applicant's annual household income, annual energy costs, statewide energy cost standards, a household's energy burden ratio, the presence of vulnerable family members, and a household's categorization in one of two income tiers. Current HEAP determination notices provide only the monetary amount of the benefit award or, in the case of denial, a form in which one of eight reasons for ineligibility is checked. No information on the factual or arithmetic bases of how eligibility or benefit amount is calculated is included in these notices. Defendants' own employees testified that the determination notices currently provided by defendants do not provide adequate information to assist HEAP applicants in making informed decisions as to whether they should request a fair hearing. None of defendants' employees, who perform HEAP eligibility calculations as part of their regular job duties, were able to identify the arithmetic or factual bases for any of the determinations contained in the notices currently being used by defendants. Therefore, none could verify the accuracy of those calculations.

█ In *Escalera v. New York City Housing Authority*, 425 F.2d 853, 862 (2d Cir.1970), the Court of Appeals for the Second Circuit found that allegations that the defendant terminated housing tenancies without providing notice of the bases for termination stated a claim for violation of the tenants' due process rights. The Court noted that appellate rights are of "little value" if the agency's determination rests on factual or arithmetic bases of which the tenant had "no knowledge and hence has had no opportunity to chal-

lenge." *Id.* Where benefit denial is based on budget calculations, due process requires that "written notice must explain the formula by which the benefit amount was calculated, the underlying facts upon which the calculations were based, and include a breakdown of the sums attributable to each factor in the equation." *Ford,* 87 F.Supp.2d at 178 (citations omitted). "Without this information, claimants cannot check the factual much less the mathematical accuracy of defendant's intended action," *id.,* and "a claimant is reduced to guessing what evidence can or should be submitted in response ... at the risk of missing the critical [argument] altogether." *Gray Panthers v. Schweiker,* 652 F.2d 146, 168–169 (D.C.Cir.1980). Accordingly, I conclude that the omission of budgetary information in HEAP determination notices where eligibility is based on a budget calculation violates applicants' due process rights to adequate notice and to a meaningful opportunity to be heard.

## B. Equal Protection Claims

█ Plaintiffs, as an alternative theory to their claim that defendants' policies and practices violate their due process rights, contend that defendants have deprived them of equal protection of the law. Regulatory classifications are valid under the Equal Protection Clause "whenever they bear a rational relationship to a legitimate governmental purpose." *Regan v. Taxation with Representation,* 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983). "A reasonable classification is one that is not arbitrary and that is based upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Defendants have provided rationales for each of the challenged policies and practices which bear a

rational relation to a legitimate state objective. New York City is the largest social service district in the State. The number of HEAP applicants in New York City and the limited funding available for the administration of the HEAP program are adequate rationales for OTDA's decision to exempt City DSS and DYCD from state regulations requiring the processing of HEAP applications within 30 days. The State has a clear interest in minimizing the administrative burdens of HEAP fund distribution, both to maximize allocation of funds to beneficiaries and to comply with federal regulations imposing limitations on the amount of money to be spent on fund administration. These rationales are sufficient to serve as a rational basis for exempting HEAP from the State's general requirement that budgetary information should be included in determination notices. Finally, the 105 day rule is rationally related to the seasonal nature of HEAP funding and the State's legitimate concerns regarding fund exhaustion. Plaintiffs are not a suspect class and have no fundamental constitutional right to HEAP benefits. *See Weinberger v. Salfi*, 422 U.S. 749, 771–772, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Ford*, 87 F.Supp.2d at 185.

## C. Violations of Federal and State Statutory Law

Finally, as another alternative theory, plaintiffs contend that defendants' challenged policies and practices violate provisions of federal law requiring the timely issuance of HEAP benefits, 42 U.S.C. § 8624(b)(5), and the availability of fair hearings to compel timely processing and to challenge HEAP eligibility determinations. 42 U.S.C. § 8624(b)(13). Plaintiffs also challenge defendants' policies and practices on the ground that they violate provisions in state law providing 60 days from the date of notice in which applicants

for public benefits may request a fair hearing. N.Y. Soc. Serv. Law § 22(4)(a).

As to plaintiffs' state law claim, the Eleventh Amendment bars federal courts from granting relief against state officials for alleged violations of state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "It is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at 106, 104 S.Ct. 900.

As to plaintiffs' federal law claim, the first issue to be decided is the availability of a private right of action. In *Gonzaga University v. Doe*, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the Supreme Court rejected the contention that Section 1983 could provide a remedy for a violation of federal law even where that law created no private right of action. The Court held that a private right of action exists to enforce provisions of federal law only where "Congress intended to create a federal right" in enacting the legislation. For a statute to confer a private right, "its text must be phrased in terms of the persons benefited." *Id.* at 284, 122 S.Ct. 2268. Once a plaintiff has shown that a statute confers a private right, "the right is presumptively enforceable by § 1983." *Id.* at 285, 122 S.Ct. 2268. A state may rebut this presumption by showing that "Congress specifically foreclosed a remedy under § 1983 ... either expressly, through specific evidence from the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 285 n. 4, 122 S.Ct. 2268. In *Gonzaga*, the Su-

preme Court concluded that no private right of action exists under the spending provisions of the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232(g), which conditions receipt of federal education funds on compliance with FERPA's confidentiality provisions.

■ Unlike FERPA, the HEAP statute at issue here is a federal entitlement program providing specific relief to a specific class of beneficiaries. And, unlike FERPA, the HEAP statute does not provide a comprehensive regulatory scheme for remedying individual grievances when provisions of federal law are violated. As the HEAP statute itself states, the sole purpose of the HEAP program is to provide heating assistance to low income households. The HEAP statute requires participating states to make HEAP payments to households which meet the financial eligibility requirements imposed by federal law. 42 U.S.C. § 8624(b). Although states have significant discretion in devising eligibility criteria under the HEAP statute, *see Rodriguez v. Cuomo,* 953 F.2d 33 (2d Cir.1992), there is no question that HEAP was enacted to "enable low-income households," like those of plaintiffs, "to meet their energy costs and needs." Pub.L. No. 103–252 § 313, 108 Stat. 6233, 665–66 (1994). Accordingly, I conclude that the three criteria outlined by the Supreme Court in *Blessing v. Freestone,* 520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), have been satisfied, and a private right of action, enforceable through Section 1983, exists in relation to the HEAP statute. My conclusion comports with other, pre-*Gonzaga* decisions in this Circuit that have either assumed, *see Marbley v. Bane,* 57 F.3d 224, 229 (2d Cir.1995); *Rodriguez,* 953 F.2d at 33; *Boyland v. Wing,* 2001 WL 761180, 2001 U.S. Dist. LEXIS 7496 (E.D.N.Y.2001);

*DeAllaume v. Perales,* 701 F.Supp. 49, 49 (S.D.N.Y.1988), or specifically found, *see Nicolau v. State of New York Dept. of Soc. Serv.,* 1995 U.S. Dist. LEXIS 20090 (S.D.N.Y 1995), *aff'd,* 112 F.3d 504 (2d Cir.1996), that a private right of action exists under HEAP.

Defendant Commissioner of OTDA cites pre-*Gonzaga* decisions from the Courts of Appeals for the Fourth and Sixth Circuits in support of his argument that the HEAP statute does not confer a private right of action. These cases rely primarily on the voluntary nature of an individual state's participation in the HEAP program, *see Cabinet for Human Resources v. Northern Kentucky Welfare Rights Association,* 954 F.2d 1179, 1185 (6th Cir.1992); *Hunt v. Robeson County Dept. of Soc. Svc.,* 816 F.2d 150 (4th Cir.1987), and on the provisions in 42 U.S.C. § 8627 for withholding funds from states which fail to comply with HEAP's statutory requirements. *Cabinet for Human Resources,* 954 F.2d at 1186. In addition to the cases in this Circuit addressing the HEAP statute, which are described above, I note that courts in this Circuit have found a private right of action where participation in a federally-funded program is a matter of state discretion and where the relevant federal statute contains a funding-withdrawal provision. *See, e.g., Rabin v. Wilson–Coker,* 266 F.Supp.2d 332, 341–42 (D.Conn.2003) (post-*Gonzaga* decision finding a private right of action under the Medicaid statute).

■ Plaintiffs in this case contend that defendants' policy and practice of failing to issue HEAP determination notices within the 30 day period provided in state regulations violates the provisions of the federal HEAP statute requiring the timely issuance of HEAP benefits. As in the due process context, plaintiffs have significantly overstated their claim. The federal statute implementing HEAP provides wide

latitude to individual states in administering the HEAP program. While 42 U.S.C. § 8624(b)(5) requires participating states to issue notice of HEAP determinations in a timely manner, federal law does not impose a specific time frame on the issuance of such notice. Rather, the federal HEAP statute provides that states must act with "reasonable promptness" in providing benefit determinations. 42 U.S.C. § 8624(b)(13). Accordingly, defendants' failure to comply with the State's 30 day time frame for issuing such notice does not necessarily violate federal law. Federal law also requires, however, that participating states provide an opportunity for review of negative determinations. 42 U.S.C. § 8624(b)(7). As in the discussion above of plaintiff's due process rights, to the limited extent that defendants' failure to timely issue a benefit determination notice impinges on an applicant's right to request a fair hearing through operation of the 105 day rule, I find that defendants' actions do violate federal law.

### III. Relief Requested

Plaintiffs have requested three forms of relief from this court: an order enjoining defendants from engaging in unconstitutional and unlawful acts in relation to the issuance of benefit determination notices; a declaration that defendants' past actions violate the United States Constitution and statutory law; and notice relief to class members of this court's decision.

Parties' seeking injunctive relief must demonstrate "an injury that is neither remote nor speculative but actual and imminent," *Shapiro v. Cadman Towers Inc.*, 51 F.3d 328, 332 (2d Cir.1995), a clear entitlement to the relief requested, *Tom Doherty Assoc. v. Saban Entertainment*, 60 F.3d 27, 33–34 (2d Cir.1995), and a balance of hardships which tips in their favor. *Clemente Global Growth Fund,*

*Inc. v. Pickens*, 705 F.Supp. 958, 971 (S.D.N.Y.1989). Plaintiffs in this case have adequately done so. HEAP benefits are a form of emergency assistance for low income and vulnerable families who face the risk of imminent harm from heating costs they cannot afford absent government intervention. The loss of even a small portion of such benefits for this class of vulnerable citizens constitutes irreparable harm. *See Morel v. Giuliani*, 927 F.Supp. 622, 635 (S.D.N.Y.1995); *Brown v. Giuliani*, 158 F.R.D. 251, 264–265 (E.D.N.Y.1994). For the reasons stated above, plaintiffs have demonstrated their entitlement to relief. Finally, plaintiffs have demonstrated a balance of hardship tipping in their favor by showing that "the harm they would suffer absent the relief sought is substantially greater than the harm [their] opponent would suffer if relief was granted." *Clemente Global Growth, Inc.*, 705 F.Supp. at 971. Plaintiffs are impoverished individuals who, absent the provision of HEAP benefits, will suffer potentially severe consequences, including heat loss, water loss, and homelessness, as a result of defendants' policies and practices. Defendants have failed to demonstrate that the changes in policy and practice which this court will order will be either prohibitively costly or time-consuming. Nor have they demonstrated that the 10% cap on administrative costs imposed by the HEAP statute will prevent them from making the required changes using federal funds. Accordingly, injunctive relief will be granted in the form that follows:

> In accord with the Opinion and Order issued by this court on September 19, 2003, defendants are ordered, from this date forward, to provide notice determinations to all applicants for regular Low Income Home Energy Assistance Program ("HEAP") benefits, in any year for which federal funds remain available for

such benefits, within 45 days of the close of the HEAP program year. It is further ordered that, from this date forward, defendants must provide notice determinations to all applicants for regular HEAP benefits that include budgetary information on how eligibility has been calculated where eligibility is based on a budget calculation. Such notice shall include any information necessary to understand the reason for the award, modification, termination, or denial of regular HEAP benefits in such detail as is necessary to permit a reasonable person to understand the basis for the agency's action, including: information about the household's annual income, annual energy costs, statewide energy cost standards, energy burden ratio, the presence of vulnerable family members, and income tier, as well as benefit computations in worksheet form.

Defendants challenge plaintiffs' request for declaratory relief on the grounds that plaintiffs' claims are moot and that a declaration regarding the illegality of defendants' past policies and practices violates the Eleventh Amendment. Defendants primarily rely on *Green v. Mansour*, 474 U.S. 64, 71, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), in which the Supreme Court held that the issuance of declaratory relief raises Eleventh Amendment concerns where no claim of continuing violation of federal law is asserted. *Id.* at 70, 106 S.Ct. 423.

In this case, however, plaintiffs contend, and this court has concluded, that there is a continuing violation of federal law and constitutional rights. While DSS has taken significant steps to reduce the processing delays that gave rise to plaintiffs' complaint, none of the defendants has asserted that DSS and DYCD have entirely eliminated the practice of issuing notice determinations in such a manner that HEAP applicants are deprived of a reason-able time in which to request a fair hearing under the 105 day rule nor have defendants asserted that they have implemented a system for providing New York City HEAP applicants with budgetary information where eligibility is based on a budget calculation. The Eleventh Amendment is not violated by granting both injunctive and declaratory relief where a continuing violation is established and a request for injunctive relief, which is clearly prospective in nature, is accompanied by a request for declaratory relief which seeks a declaration for past wrongs but does not seek to impose a monetary loss on the state for past conduct. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 646, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 290 (2d Cir.2003); *Aiken v. Capital District Psychiatric Center*, 236 F.Supp.2d 211, 227–28 (N.D.N.Y.2002).

The dictates of federalism demand that federal courts "not use a sledgehammer when a more delicate instrument will suffice" and not "move too quickly where it appears that the state, in the exercise of its administrative authority, will in its own way adopt reforms bringing its system into compliance with the Constitution." *Dean v. Coughlin*, 804 F.2d 207, 213 (2d Cir. 1986). However, federalism does not demand that courts refrain entirely from issuing directives to compel compliance with constitutional requirements or federal law where violations of rights have occurred. *See Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green*, 474 U.S. at 69, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Accordingly, a declaration in the following form will issue:

In accord with the Opinion and Order issued by this court on September 19,

2003, this court declares that defendants' failure to issue determination notices to applicants for regular Low Income Home Energy Assistance Program ("HEAP") benefits, for any year in which federal funds remain available for such benefits, within 45 days of the close of the HEAP program year violates the Due Process guarantees of the Fourteenth Amendment to the United States Constitution and the provisions of 42 U.S.C. § 8624. This court further declares that defendants' failure to provide applicants for regular HEAP benefits with determination notices which include budgetary information on how eligibility for benefits is calculated where eligibility is based on a budget calculation violates the Due Process guarantees of the Fourteenth Amendment to the United States Constitution.

█ Finally, defendants oppose the grant of any form of retroactive relief on Eleventh Amendment grounds. Neither plaintiffs' complaint nor their moving papers in support of their motion for summary judgment and class certification requests the award of retroactive monetary relief. As an ancillary form of prospective relief, however, plaintiffs have requested notice relief to past applicants for HEAP benefits to advise them of this court's decision that defendants have violated federal and constitutional law. Such relief is not barred by the Eleventh Amendment. *See Quern,* 440 U.S. at 337, 99 S.Ct. 1139. Accordingly, *Quern* notice relief will be granted. Plaintiffs and defendants shall confer as to the appropriate form and manner of distribution of such relief and submit a joint proposed Order to this court, by October 15, 2003, that complies with the limitations imposed by *Quern.* 440 U.S. at 337, 99 S.Ct. 1139. If the parties are unable to agree, proposed forms of notice and distribution plans shall be submitted to the court by the same date.

## Conclusion

For the reasons stated in the foregoing Opinion and Order, plaintiffs' motion for class certification is granted. Partial summary judgment is granted to plaintiffs on their claim that defendants' policy and practice of issuing HEAP determination notices such that applicants are not provided with a reasonable time in which to request a fair hearing under the 105 day rule violates plaintiffs' due process rights and the federal HEAP statute. Partial summary judgment is also granted to plaintiffs on their claim that defendants' policy and practice of issuing HEAP determination notices that do not include budgetary information on how eligibility has been calculated where eligibility is based on a budget calculation violates plaintiffs' due process rights. Partial summary judgment is granted to all defendants on plaintiffs' remaining claims. Accordingly, an injunction and declaratory judgment in the form described in the foregoing Opinion and Order will issue.

**SO ORDERED.**