404 F.3d 105
 Eileen KAPPS, Geraldine Boyland, Alice Costello, Joan Ford, Joanne Karl and Margaret Riley, individually and on behalf of all others similarly situated, Plaintiffs-Appellees,
v.
Brian J. WING, as Commissioner of the Office of Temporary and Disability Assistance of the New York State Department of Family Assistance, Jason A. Turner, as Commissioner of the New York City Department of Social Services and Jerry Cammarata, as Commissioner of the New York City Department of Youth and Community Development, Defendants-Appellants.
 Docket No. 03-9117-cv(L).
 Docket No. 04-1271-cv(CON).
 United States Court of Appeals, Second Circuit.
 Argued: November 22, 2004.
 Decided: April 4, 2005.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Peter Vollmer, Law Offices of Vollmer and Tanck, Jericho, NY, for Plaintiffs-Appellees.
 Grace Goodman, Assistant Corporation Counsel for Michael A. Cardozo, Corporation Counsel for the City of New York (Larry A. Sonnenshein, of counsel), New York, NY, for Defendants-Appellants Cammarata and Turner.
 Oren L. Zeve, Assistant Solicitor General for Eliot Spitzer, Attorney General of the State of New York (Michael S. Belohlavek, Deputy Solicitor General, of counsel), New York, NY, for Defendant-Appellant Wing.
 Before: CALABRESI, B.D. PARKER, and RAGGI, Circuit Judges.
 CALABRESI, Circuit Judge.
 
 
 1
 Defendants appeal from the judgment of the district court (Gershon, J.) granting plaintiffs partial summary judgment, and entering an award of declaratory and injunctive relief. The district court based its judgment on findings that, in the administration of New York's Home Energy Assistance Program ("HEAP"), defendants violated the procedural requirements of the federal Due Process Clause, and the Low Income Home Energy Assistance Act ("the LIHEAA" or "the Act"). See Kapps v. Wing, 283 F.Supp.2d 866 (E.D.N.Y.2003). We conclude that plaintiffs' due process arguments have merit, and accordingly affirm the judgment of the district court, insofar as it found violations of due process in defendants' administration of the HEAP program. We do not, however, address the district court's alternate holding that the LIHEAA creates individually enforceable rights. Resolving this question would require us to address difficult issues. And, since the substantive relief awarded by the district court is fully supported by the finding of a due process violation, we leave these issues to another day.[1]
 
 I. BACKGROUND
 A. Statutory Framework
 
 2
 Congress enacted the Low Income Home Energy Assistance Act ("LIHEAA") in 1981 in response to the rising costs of oil-based energy. See Marbley v. Bane, 57 F.3d 224, 227 (2d Cir.1995). LIHEAA was intended to, and has since its passage, assisted the states in providing home energy assistance to low income families. Id. Participating states are given a block grant, which may be used for two primary purposes: 1) to assist poor families in meeting their regular heating[2] costs ("regular HEAP benefits"); and 2) to intervene in energy crises to prevent any interruption in needy households' heat ("emergency HEAP benefits"). See 42 U.S.C. § 8624(b)(1). While state LIHEAA programs must comply with certain federal statutory requirements, the states are, as a general matter, afforded substantial discretion in defining the specific contours of their LIHEAA program. See generally 42 U.S.C. § 8624 (setting forth the requirements for participating in the LIHEAA block grant program).
 
 
 3
 Levels of LIHEAA funding are set by Congress on an annual basis. See 42 U.S.C. § 8621. Allocated funds are distributed among participating states on the basis of a complicated statutory formula. See 42 U.S.C. § 8623. States may, but need not, choose to supplement federal funds with state monies, in order to ensure that all eligible households are provided with benefits. New York, like some other states, has opted not to supplement federal funds, and hence provides benefits only to the extent that federal funding is available in any given program year. See N.Y. Soc. Serv. L. § 97[2]; see also Wisc. Stat. Ann. § 16.27[3].
 
 
 4
 New York's Home Energy Assistance Program ("HEAP") was created by the New York State Legislature in 1983, in order allow the state to take advantage of the LIHEAA block grant program. Like many of New York's other social services programs, HEAP is administered jointly by the state and by local social service districts. At the state level, the Office of Temporary and Disability Assistance ("OTDA") annually sets standard eligibility criteria and benefits levels for the forthcoming year. See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.4(c). The OTDA is also responsible for establishing a "program year," within which all HEAP applications must be received. See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.3(a). Local social service districts are responsible for the actual processing of HEAP applications, and for notifying applicants of benefits eligibility. See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.2. Social service districts may also contract with community organizations, known as "alternative certifiers," to process local applications for HEAP benefits. See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.2(b).
 
 
 5
 Under regulations passed by the OTDA, there are two categories of households which may be eligible for regular HEAP benefits: 1) "[c]ategorically income eligible households"; and 2) "[i]ncome tested households." See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.4(c). "Categorically eligible" households are those that include at least one household member who receives at least one of several specified federal or state benefits. See id. Households that are not categorically eligible may qualify for HEAP benefits by demonstrating income eligibility, in accordance with standards set by the state on an annual basis.[3] Id. Once found eligible, a household's HEAP benefits allocation is determined in accordance with a complicated payment matrix, or point system. Id. This "payment matrix" takes into account such factors as family income, the energy burden ratio of the household, the amount of federal funds allocated for the year, and the presence of "vulnerable" household members.[4] See id.; see also Ex. 39, Decl. of Peter Vollmer, No. 98 CIV 7734, Kapps v. Wing, 283 F.Supp.2d 866 (E.D.N.Y.2003) (reproduction of the defendants'"Heating Benefit Calculation Worksheet").
 
 
 6
 The regulations in effect at the time of the district court's decision required the defendants to process all HEAP applications within 30 business days.[5] See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.5. Historically, however, actual processing times have deviated considerably from this regulatory goal. During the pendency of this litigation, average processing times for New York City HEAP applications have varied between 21 and 122 days. At the time that the parties briefed the motion for summary judgment in the district court, most, but not all, New York City applications were being processed within the 30 day period mandated by the state.
 
 
 7
 HEAP applicants are notified of the granting or the denial of HEAP benefits in a notice issued by the social service district or by the alternative certifier. N.Y. Comp.Codes R. & Regs. tit. 18, § 393.5(a). If the applicant has been found ineligible for benefits, this notice usually, but not always, includes very basic information on why benefits have been denied. Applicants who have been found eligible for HEAP benefits are sometimes informed of the amount of benefits they will receive. But, apart from that, they are given no information, other than that their benefits application has been approved. In all cases, the notice advises applicants that they can obtain further information in a number of ways, including by calling the social service district, or by setting up a meeting with a benefits specialist.
 
 
 8
 Ordinarily, applicants have 60 days from the date of the HEAP notice, during which they may request an administrative "fair hearing" to challenge the agency's eligibility and/or benefits level determination. See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.5(e). Under state regulations, however, fair hearings may not be requested more than 105 days after the close of the HEAP program year. Id. As such, when HEAP applicants receive notice of the grant or denial of HEAP benefits more than 105 days after the termination of the program year, they are totally foreclosed from seeking a fair hearing. And, those applicants who receive notice of HEAP eligibility more than 45 days after the close of the program year will have less than the full 60 days within which to request a fair hearing.
 
 B. Facts / Procedural History
 
 9
 Named plaintiffs Eileen Kapps, Geraldine Boyland, Alice Costello, Joan Ford, Joanne Karl and Margaret Riley filed this action in 1998. In their complaint, they alleged various violations inter alia of the LIHEAA and of the federal Due Process Clause in the defendants' administration of the New York City HEAP program. Specifically, as relevant to this appeal, plaintiffs contended below that the denial of the right to a fair hearing (by virtue of the operation of the 105 day rule, when combined with delays in providing notification of benefits) violated due process and the LIHEAA. Plaintiffs also claimed that the HEAP notices — by failing to provide information on how the applicant's benefits eligibility and allotment was calculated — did not meet the requirements of due process.
 
 
 10
 Plaintiffs named as defendants Brian J. Wing, the Commissioner of the OTDA, Jason A. Turner, the Commissioner of the New York City Department of Social Services[6] ("DSS"), and Martin Oesterreich[7], the Commissioner of the New York City Department of Youth and Community Development ("DYCD") (which is the city agency that coordinates the participation of alternative certifiers). Plaintiffs sought to represent themselves, and all other applicants for regular HEAP benefits in the City of New York who had been denied certain procedural protections in the processing of their HEAP applications.[8]
 
 
 11
 Following discovery, the plaintiffs moved for summary judgment and class certification. Defendants Cammarata and Turner opposed plaintiffs' motion for summary judgment, and objected to the scope of the plaintiff class. Defendant Wing cross-filed for summary judgment and opposed plaintiffs' motion for class certification. The district court, in a carefully reasoned opinion dated September 19, 2003, granted class certification, and gave summary judgment in part to the plaintiffs and in part to the defendants.[9] See Kapps, 283 F.Supp.2d at 883. The Court accepted plaintiffs' contentions, as set forth above, that certain aspects of the defendants' operation of the HEAP program violated the Due Process Clause and the provisions of the LIHEAA. Id. It, however, rejected all other aspects of the plaintiffs' claims. Id.
 
 
 12
 Judgment was entered on September 22, 2003, awarding plaintiffs declaratory, injunctive, and Quern notice relief.[10] In all other respects, the defendants were granted summary judgment. The defendants appealed.
 
 II. DISCUSSION
 A. Standard of Review
 
 13
 We review a district court's grant of summary judgment de novo. See Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir.2002). Summary judgment is only appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. See Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir.2004). In determining whether there are genuine issues of material fact, we draw all permissible inferences in favor of the non-moving party. See Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir.2004).
 
 
 14
 Where summary judgment has been properly granted on the merits, we review a district court's decision to grant injunctive relief for abuse of discretion. See EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1534 (2d Cir.1996). The district courts have "broad discretion to enjoin possible future violations of law where past violations of the law have been shown." Henrietta D. v. Bloomberg, 331 F.3d 261, 290 (2d Cir.2003) (internal quotation marks omitted).
 
 B. Due Process
 
 15
 The plaintiffs have alleged that the defendants' practices in administering New York City's HEAP program violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment. In adjudicating such a claim, we consider two distinct issues: 1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause; and, if so, 2) whether existing state procedures are constitutionally adequate. See Sealed v. Sealed, 332 F.3d 51, 55 (2d Cir.2003). The defendants[11] argue that the plaintiffs possess no property interest in HEAP benefits, and that we therefore need not consider the second step of the due process inquiry. They also contend that — even assuming the plaintiffs have some constitutionally protected interest — the plaintiffs were afforded all the process that is required. Because an award of HEAP benefits to qualified applicants is mandatory and not discretionary (at least to the extent the program is funded in any given year), we conclude that the plaintiffs possess a sufficient property interest in the receipt of HEAP benefits to warrant due process protection in their demonstration of eligibility. We also conclude that the district court properly found existing procedures to be inadequate as a matter of federal constitutional law.
 
 
 16
 i. Property Interest
 
 
 17
 Social welfare benefits have long been afforded constitutional protection as a species of property protected by the federal Due Process Clause. See Goldberg v. Kelly, 397 U.S. 254, 262 & n. 8, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). While not all benefits programs create constitutional property interests, procedural due process protections ordinarily attach where state or federal law confers an entitlement to benefits. See, e.g., Cook v. Principi, 318 F.3d 1334, 1351 (Fed.Cir.2002) (Gajarsa, J., dissenting) ("It is well established that recipients of statutory entitlements such as Social Security disability benefits have a property interest protected by the Due Process Clause. . . ."). A mere "unilateral expectation" of receiving a benefit is not, however, enough; a property interest arises only where one has a "legitimate claim of entitlement" to the benefit. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
 
 
 18
 In determining whether a given benefits regime creates a property interest protected by the Due Process Clause, we look to the statutes and regulations governing the distribution of benefits. See Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir.1991). Where those statutes or regulations "meaningfully channel[ ] official discretion by mandating a defined administrative outcome," a property interest will be found to exist. Sealed, 332 F.3d at 56. Thus, to the extent that state or federal law "meaningfully channels" the discretion of state or local officials by mandating an award of HEAP benefits to applicants who satisfy prescribed eligibility criteria, plaintiff-applicants possess a property interest, protected by the federal Due Process Clause.
 
 
 19
 We agree with the defendants that the LIHEAA does not, by itself, create a property interest. The LIHEAA affords substantial discretion to the states, both in deciding whether to participate in the home energy program, and, if they choose to participate, in crafting their own state-level home energy laws. See 42 U.S.C. § 8624. While the Act does require participating states to certify that they agree to target certain populations, see, e.g., id. at §§ 8624(b)(2), (5), and to allocate at least some of their benefits to specified goals of the Act, see, e.g, id. at §§ 8624(b)(1), (16), it dictates no particular result as to any given benefits applicant. See generally Rodriguez v. Cuomo, 953 F.2d 33 (2d Cir.1992) (analyzing various provisions of the Act, and concluding that they did not prevent the state from excluding a particular category of possible HEAP beneficiaries). Accordingly, the LIHEAA itself cannot be considered to "channel" official discretion sufficiently "meaningfully" so as to confer a due process protected property right. See, e.g., Colson ex rel. Colson v. Sillman, 35 F.3d 106, 109 (2d Cir.1994); see also Washington Legal Clinic for the Homeless v. Barry, 107 F.3d 32, 36-37 (D.C.Cir.1997).
 
 
 20
 Property interests, however, do not arise only from federal law. To the extent that state law imposes "substantive predicates" that limit the decision-making of HEAP officials, it too may confer a constitutionally protected property right. See Sealed, 332 F.3d at 56; see also Roth, 408 U.S. at 577, 92 S.Ct. 2701; Greenwood v. New York Office of Mental Health, 163 F.3d 119, 122 (2d Cir.1998). As a result, we must also look to New York law to determine whether plaintiffs possess a property right in the receipt of HEAP benefits. Even a cursory examination of that law reveals that it provides precisely the type of discretion-limiting "substantive predicates" that are the hallmarks of protected property rights.
 
 
 21
 Like other statutory frameworks that we have found to create property interests[12], New York state law sets fixed eligibility criteria for the receipt of HEAP benefits.[13] See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.4(c) (setting forth standard eligibility criteria for the receipt of HEAP benefits, and indicating that "once determined eligible a household will receive a regular HEAP benefit") (emphasis added); see also N.Y. Soc. Serv. L. § 97[2] (indicating that social service districts "shall be required. . . to participate in the federal low-income home energy assistance program and to assist eligible households.") (emphasis added). Similarly, the amount of benefits provided to eligible applicants is determined in accordance with a standard benefits matrix. See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.4(c) (eligible households will receive a HEAP benefit in accordance with an annually established payment matrix); see also Ex. 39, Decl. of Peter Vollmer, No. 98 CIV 7734, Kapps v. Wing, 283 F.Supp.2d 866 (E.D.N.Y.2003) (reproduction of the defendants'"Heating Benefit Calculation Worksheet"). And, there has been no intimation in the course of this litigation that discretionary factors enter into the determination of HEAP eligibility or of benefits amount. On the contrary, it appears that all of the factors considered by the state in assessing individual HEAP eligibility are objective, and as such are ones over which HEAP administrators have no discretionary control. See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.4(c); see also Ex. 39, Decl. of Peter Vollmer, No. 98 CIV 7734, Kapps v. Wing, 283 F.Supp.2d 866 (E.D.N.Y.2003) (reproduction of the defendants'"Heating Benefit Calculation Worksheet").
 
 
 22
 Notwithstanding this mandatory statutory and regulatory framework, defendants contend that some characteristics of the HEAP program render the plaintiffs' receipt of HEAP benefits too uncertain to give plaintiffs a property interest subject to due process protection. Specifically, defendants allege that the fact that the plaintiffs are applicants for benefits, rather than current recipients of benefits, renders their interest in the benefits too tenuous to qualify for due process protection. Defendants also argue that the HEAP program's dependence on federal funds means that no individual plaintiff can be assured of receiving benefits, thus rendering any individual's anticipation of benefits a mere "unilateral expectation," rather than a "legitimate claim of entitlement." See Roth, 408 U.S. at 577, 92 S.Ct. 2701.
 
 
 23
 In light of these two factors, defendants suggest, it does not matter whether or not state law sets forth discretion-restricting guidelines for the operation of the HEAP program, since any individual plaintiff's interest remains too contingent to constitute a property interest under federal law. And, it is true that what might — judged solely by reference to the discretion limiting predicates set forth in state law — be found to constitute a due process protected property interest may sometimes, because of countervailing considerations, be found not to constitute such an interest. See, e.g., Velez v. Levy, 401 F.3d 75, 85-86 (2d Cir.2005) (finding that public office did not constitute a due process "property" right, despite the fact that state law limited the circumstances in which plaintiff could be suspended from office). But, in the case before us, neither of defendants' contentions is availing.
 
 
 24
 
 a) Applicants for Benefits
 
 
 
 25
 The Supreme Court has repeatedly reserved decision on the question of whether applicants for benefits (in contradistinction to current recipients of benefits) possess a property interest protected by the Due Process Clause. See, e.g., Lyng v. Payne, 476 U.S. 926, 942, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986); Walters v. National Ass'n of Radiation Survivors, 473 U.S. 305, 320 n. 8, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985); see also Gregory v. Town of Pittsfield, 470 U.S. 1018, 1018, 105 S.Ct. 1380, 84 L.Ed.2d 399 (1985) (O'Connor, J., dissenting from the denial of certiorari). Every circuit to address the question, however, has concluded that applicants for benefits, no less than current benefits recipients, may possess a property interest in the receipt of public welfare entitlements. See Kelly v. Railroad Ret. Bd., 625 F.2d 486, 489-90 (3d Cir.1980); Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 637-640 (4th Cir.1996); Flatford v. Chater, 93 F.3d 1296, 1304-05 (6th Cir.1996); Hamby v. Neel, 368 F.3d 549, 557-59 (6th Cir.2004); Daniels v. Woodbury County, 742 F.2d 1128, 1132-33 (8th Cir.1984); Foss v. National Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir.1998); Griffeth v. Detrich, 603 F.2d 118, 121-22 (9th Cir.1979); Ward v. Downtown Dev. Auth., 786 F.2d 1526, 1531 (11th Cir.1986); see also Raper v. Lucey, 488 F.2d 748, 752 (1st Cir.1973) (finding "no legitimate basis" for distinguishing between applying for a liberty"benefit" and having that benefit withdrawn); Gonzales v. City of Castle Rock, 366 F.3d 1093, 1103 n. 7 (10th Cir.2004) (en banc) (the fact that "it may ultimately be found that an individual does not satisfy the relevant criteria necessary to receive [a] benefit" does not negate the existence of a property interest, protected by due process), cert. granted on other grounds, ___ U.S. ___, 125 S.Ct. 417, 160 L.Ed.2d 316 (2004). And, our own circuit has indicated on at least three occasions that benefits applicants may possess a property interest, albeit in circumstances that differ somewhat from the instant case. See Kraebel v. New York City Dep't of Hous. Preservation & Dev., 959 F.2d 395, 404-05 (2d Cir.1992); Charry v. Hall, 709 F.2d 139, 144 (2d Cir.1983); Basciano v. Herkimer, 605 F.2d 605, 609 (2d Cir.1978). Indeed, we have explained that "[w]hether a benefit invests the applicant with a `claim of entitlement' or merely a `unilateral expectation' is determined by the amount of discretion the disbursing agency retains," and "[t]he question of entitlement thus hinges on whether, `absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.'" Colson, 35 F.3d at 108-09 (quoting Yale Auto Parts v. Johnson, 758 F.2d 54, 59 (2d Cir.1985)).[14] More recently, however, we have concluded that, when the statutory scheme in question mandates award of the benefit upon satisfaction of specified criteria, an applicant has a limited but sufficient interest in the receipt of that benefit to "warrant some measure of due process protection" in demonstrating his eligibility. Cf. Abuhamra, 389 F.3d at 319 (finding that although a convicted felon loses his substantive right to liberty, a defendant who applies for release on bail has a limited post-verdict liberty interest under 18 U.S.C. § 3143(a)(1), since that section provides that the judicial officer "shall order" defendant's release upon satisfaction of certain criteria).
 
 
 26
 The rationale for recognizing applicants' due process rights in these cases is apparent. Statutory language may so specifically mandate benefits awards upon demonstration of certain qualifications that an applicant must fairly be recognized to have a limited property interest entitling him, at least, to process sufficient to permit a demonstration of eligibility.
 
 
 27
 Defendants argue, however, that plaintiffs as applicants cannot possess a due process protected interest in the receipt of benefits, because they have not yet been shown to fulfill the eligibility criteria for HEAP benefits. This contention is without merit.
 
 
 28
 We note as an initial matter that, as to past violations of due process, all of the named plaintiffs were found eligible for benefits, and hence, even under defendants' argument, possessed a protected property interest in the receipt of benefits.[15] See Kapps, 283 F.Supp.2d at 871. More fundamentally, the defendants' position misapprehends the purpose of requiring the state to afford adequate procedural due process protections in determining eligibility for benefits that state law makes a matter of entitlement. For, as the Tenth Circuit recently observed, the aim of proper procedures is precisely to allow the state to decide properly whether the applicant in fact has a legitimate claim of entitlement. See Gonzales, 366 F.3d at 1103 n. 7; see also Mallette, 91 F.3d at 637 (making a similar observation); cf. Abuhamra, 389 F.3d at 320 (concluding that a post-verdict defendant who seeks release on bail must, as a matter of due process, be afforded the opportunity to demonstrate that he satisfies the statutory burden which would trigger mandatory release).
 
 
 29
 It is for this reason that, in cases involving the termination of benefits, federal courts do not ask whether the plaintiffs are entitled to the continuation of benefits, or whether they are, as the agency found, no longer eligible. Instead, the focus of the federal courts is on the adequacy of the procedures used to make that determination. See Goldberg, 397 U.S. at 256 n. 2, 90 S.Ct. 1011; see also Roth, 408 U.S. at 577, 92 S.Ct. 2701 (observing that the benefits recipients in Goldberg"had not yet shown that they were, in fact, within the statutory terms of eligibility."); cf. Fuentes v. Shevin, 407 U.S. 67, 87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) ("The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merit. It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake. . . .") (internal citation and quotation marks omitted).
 
 
 30
 Comparably, our property interest analysis in the instant case extends only to the consideration of whether — were an applicant able to make out the requirements for HEAP eligibility — he or she would be entitled to benefits as a matter of law. If he or she would be so entitled, state law creates a property interest, and an applicant must be afforded procedural protections under the Due Process Clause to demonstrate his or her eligibility. We therefore reject the defendants' argument that plaintiffs' status as benefits applicants renders their interest in HEAP benefits insufficiently definite to constitute a "property" interest for the purposes of federal law.
 
 
 31
 
 b) Benefits Contingent on the Availability of Federal Funds
 
 
 
 32
 Under New York State law, no HEAP applicant can be certified as eligible for, and entitled to, HEAP benefits, if federal LIHEAA funds have been exhausted. See N.Y. Soc. Serv. L. § 97[2]. It follows that not all HEAP applicants who are technically "eligible" for state benefits, will be entitled to receive those benefits.[16] The defendants contend that this fact renders plaintiffs' interest in the receipt of benefits too tenuous to constitute a property interest. Specifically, they contend that the fact that no individual applicant can be assured of the receipt of benefits renders the interest a mere "unilateral expectation," rather than "a legitimate [claim of] entitlement." See Roth, 408 U.S. at 577, 92 S.Ct. 2701.
 
 
 33
 Relatively few courts have addressed the question of whether a social services program's contingency on the availability of funding renders it too indefinite to create a property interest. Those courts that have have generally concluded that — to the extent that funds are available[17] — statutes that would create protected property interests apart from funding limits do so regardless of these limits. See, e.g., Alexander v. Polk, 750 F.2d 250, 260-61 (3rd Cir.1984); Weston v. Cassata, 37 P.3d 469, 476-77 (Colo.Ct.App.2001). But cf. Washington Legal Clinic for the Homeless v. Barry, 107 F.3d 32, 37 (D.C.Cir.1997) (concluding that a property interest in the receipt of shelter resources did not exist where D.C. law did not mandate any particular priority system for the distribution of limited shelter resources).
 
 
 34
 We agree with these other courts' approach. Under state law, eligible HEAP applicants are entitled to receive benefits, so long as funding for such benefits remains available. See N.Y. Soc. Serv. L. § 97[2]; N.Y. Comp.Codes R. & Regs. tit. 18, § 393.4(c). To the extent that LIHEAA program funds are available, the fact that the HEAP program is, as a general matter, limited to the extent of federal funding does not matter. Plaintiffs' claim of entitlement — while funds remain available — is the same as it would be were the program not contingent on the availability of sufficient funds.
 
 
 35
 We therefore conclude that plaintiffs possess a valid property interest in the receipt of regular HEAP benefits.
 
 
 36
 ii. Process Due
 
 
 37
 Having determined that plaintiffs possessed a protected property interest, we must determine "what process plaintiffs were due before they could be deprived of that interest." Sealed, 332 F.3d at 55. In doing so, we apply the Supreme Court's familiar Mathews v. Eldridge test. See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Pursuant to this test, we conclude that the process due to applicants for HEAP benefits is notice of the reasons for the agency's preliminary determination, and an opportunity to be heard in response. Cf. Abuhamra, 389 F.3d at 320-21.
 
 
 38
 Under Mathews, three factors guide our decision: 1) the private interest affected; 2) the risk of erroneous deprivation, and the probable value, if any, "of additional or substitute procedural safeguards"; and 3) the government's interest, which may include the fiscal and administrative burdens that additional procedures would impose. See id. at 335, 96 S.Ct. 893. Because the plaintiffs have not appealed the district court's determination that they were not entitled to the full procedural relief requested below, we restrict our discussion to the propriety of the procedures ordered by the district court.
 
 
 39
 As the district court properly found, "the importance of the private interest at stake in this case is high." Kapps, 283 F.Supp.2d at 875. While HEAP grants are small in dollar amounts, they are targeted to those households that "are among the poorest in America." Sen. Rep. No. 103-251, 103rd Cong., 2d Sess. at *9 (1994). By design, the HEAP program affords relief only to those who might otherwise risk a shut-off in heating services. Thus, the erroneous denial of HEAP benefits may well result in a household being left without heat.
 
 
 40
 The adverse effects of an erroneous cut off of heat services are "self-evident." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 18, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). As noted by the Supreme Court in Memphis Light,"[u]tility service is a necessity of modern life . . . . [T]he discontinuance of water or heating for even short periods of time may threaten health and safety." Id. The gravity of the health risks posed by a discontinuation of heating services is even greater for many HEAP recipients than for the general public, as the program specifically targets households which include potentially frail individuals. In addition, many other collateral effects may result from the termination of heat, including frozen plumbing, eviction and homelessness. See Sen. Rep. No. 103-251, 103rd Cong., 2d Sess. at *10 (1994). Clearly, then, the plaintiffs' interest in not being erroneously denied HEAP benefits is substantial.
 
 
 41
 In contrast, the government's interest in avoiding the procedures imposed by the district court is less significant. The district court ordered the defendants to modify their HEAP procedures in two respects: 1) by making post-determination fair hearings available to all HEAP claimants; and 2) by providing more extensive notice information to benefits claimants. See Kapps, 283 F.Supp.2d at 883.
 
 
 42
 As to the former, fair hearing requirement, the defendants have not alleged any governmental interest which would be harmed by the district court's award of relief. See City Defendants' Brief and State Defendant's Brief, Kapps v. Wing, No. 03-9117-cv(L), 04-1271-cv(CON), 2005 WL 752378 (2d Cir.2005). Indeed, post-determination fair hearings are already available to HEAP claimants[18], except where benefits determinations are issued so late as to run afoul of the state's "105 day rule."[19] See Section I. A., supra. And, although defendants have argued that the district court's award of notice relief will be prohibitively expensive, this contention — as discussed in greater detail below — is unsupported by the record.
 
 
 43
 Given the strength of the plaintiffs' interest, and the weakness of that of the government, the defendants face an uphill struggle in arguing that the relief awarded by the district court was improper. Nevertheless, the forcefulness of the defendants' contentions require that we consider their arguments in detail. Because the defendants raise distinct arguments in opposing the fair hearing and notice relief mandated by the district court, we address the appropriateness of those procedural requirements seriatim.
 
 
 44
 
 a) Requirement of a Post-Determination Hearing
 
 
 
 45
 The district court, applying the traditional Mathews v. Eldridge factors, found that the plaintiffs were entitled to a fair hearing to contest a decision to deny them benefits, or, if benefits were granted, the amount of benefits awarded. See Kapps, 283 F.Supp.2d at 877. And it therefore held that — insofar as the defendants' processing delays resulted in plaintiffs being deprived of a meaningful (or of any) opportunity to request a fair hearing — defendants were in violation of the Due Process Clause. Id. It accordingly enjoined the defendants from issuing notice of determinations of HEAP eligibility more than 45 days after the close of the HEAP program year.[20]
 
 
 46
 The requirement that the government afford individuals an opportunity to be heard is among the most fundamental requirements of the Due Process Clause. See, e.g., Goss v. Lopez, 419 U.S. 565, 576, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (the right to some type of hearing is a "basic right" of anyone possessing a due process property interest); see also Abuhamra, 389 F.3d at 321-23. As such, there ordinarily would be no question that, to the extent the plaintiffs possess a due process protected property right, they are entitled to some kind of a hearing.
 
 
 47
 The defendants, however, raise two arguments in opposition to the district court's award of fair hearing relief: 1) that under our decision in New York State NOW v. Pataki, 261 F.3d 156 (2d Cir.2001), existing state procedures — because they allow the plaintiffs to compel the issuance of timely benefits determinations — comply with the requisites of due process; and 2) that — to whatever extent defendants' procedures may have violated due process in the past — the defendants have so substantially improved their processing times that a grant of injunctive relief is no longer appropriate.[21] We conclude that neither of these arguments has merit.
 
 
 48
 1) New York State NOW v. Pataki, 261 F.3d 156 (2d Cir.2001)
 
 
 49
 New York State NOW v. Pataki was a suit brought in response to burgeoning processing delays in the New York State Division of Human Rights during the early 1990s. The NOW plaintiffs alleged that the processing delays — which in some instances approached a decade — prejudiced their ability to prove their discrimination causes of action. See id. at 162. Because such causes of action have been recognized to constitute property within the meaning of the Due Process Clause, see, e.g., Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 312-13, 70 S.Ct. 652, 94 L.Ed. 865 (1950), plaintiffs argued that the delays deprived them of a property interest, without due process of law. See NOW, 261 F.3d at 165.
 
 
 50
 Our court, applying the Mathews v. Eldridge analysis, found that whatever property interest plaintiffs possessed was adequately protected by the availability of Article 78 proceedings.[22] See id. at 168. As we noted, Article 78 proceedings would allow individual claimants to bring mandamus actions against government officials once any delay in processing times became unreasonable. Id. Using Article 78 proceedings, therefore, NOW plaintiffs were fully able to compel the Division to act, prior to the accrual of any prejudice to plaintiffs' causes of action. Id. Because plaintiffs had at their disposal a state procedure which allowed them to contest the deprivation of their property interest, we found that "the second Mathews factor weigh[ed] dispositively in favor of the government," and that no due process violation had occurred. Id.
 
 
 51
 The defendants contend that the logic of NOW applies to the instant litigation, and precludes our court from finding state HEAP procedures to be violative of due process. As the defendants note, two state procedures do exist — Article 78 proceedings and pre-determination fair hearings — which theoretically could be used by HEAP claimants to compel the timely issuance of benefits determinations. See generally N.Y. C.P.L.R. art. 78 (setting forth the process by which Article 78 proceedings can be brought); N.Y. Comp.Codes R. & Regs. tit. 18, § 393.5(c) (indicating that HEAP claimants have a right to seek a fair hearing if a benefits determination has not been made in 30 business days). As a result, the defendants argue, adequate state remedies exist, and the district court erred in ordering additional fair hearing relief.
 
 
 52
 We agree with the plaintiffs that these procedures seem unlikely to provide an adequate means of avoiding the operation of the 105 day rule. For, as the legal framework governing the procedures makes plain, the time period necessary to utilize the procedures themselves may well extend beyond the 105 day deadline. See, e.g., N.Y. Comp.Codes R. & Regs. tit. 18, § 393.5(c) (HEAP claimants may seek a fair hearing after 30 business days); N.Y. Comp.Codes R. & Regs. tit. 18, § 358-6.4 (unless a fair hearing is expedited, the government has 90 days from the date of the fair hearing request to issue a determination). Nevertheless, we need not ultimately resolve whether such procedures could constitute an adequate means of protecting plaintiffs' fair hearing rights, as we conclude, for the reasons that follow, that NOW is simply inapplicable to the circumstances of this litigation.
 
 
 53
 The defendant's argument — analogizing this case to NOW — relies on the assumption that here, as in NOW, the plaintiffs are seeking a means of challenging processing delays. But, the district court expressly rejected the plaintiffs' argument that processing delays — absent more — entitled HEAP claimants to a fair hearing (or to any other form of due process relief). See Kapps, 283 F.Supp.2d at 877. And, the plaintiffs have chosen not to appeal this aspect of the district court's holding.[23] As such, there is no claim before us that the defendants — as in NOW — must provide an adequate procedural mechanism for challenging processing delays.
 
 
 54
 What is before us is plaintiffs' claim that they must be afforded a fair hearing prior to the agency's final determination of whether they are entitled to an award of HEAP benefits. Applying well-established law, the district court concluded that plaintiffs are entitled to such a hearing. Id. (A conclusion with which we agree.) Because some claimants were not being afforded such a merits hearing, the district court found that the defendants' operation of the HEAP program was in violation of the Due Process Clause. See id.
 
 
 55
 In fashioning a remedy for these due process violations, the district court could have taken either of two approaches: 1) it could have ordered the state to provide HEAP claimants with hearings, no matter how late a hearing request is made, where the delay was attributable to untimely notice; or 2) it could have ordered the state to issue benefits determinations promptly enough to allow claimants a reasonable time before the operation of the 105 day rule to seek a hearing. The district court — in electing the latter course — chose the alternative which minimizes disruption to the state's existing HEAP regulations.[24] The former option, however, would have been equally responsive to the district court's due process concern. In neither instance was there any reason for the court to consider the availability of Article 78 proceedings and pre-determination fair hearings, as those procedures would not afford plaintiffs the opportunity to contest the correctness (as compared to the timing) of the agency's benefits determination.
 
 
 56
 Thus, we conclude that the district court's award of fair hearing relief was appropriate, and not governed by our decision in NOW.
 
 2) Injunctive Relief
 
 57
 The defendants also contend that, even if fair hearing relief might at one point have been appropriate, the defendants' processing times have so substantially improved that it was an abuse of discretion for the district court to award injunctive relief.[25] This second argument requires little discussion.
 
 
 58
 The district courts have broad discretion in deciding whether to award injunctive relief. See, e.g., Etuk v. Slattery, 936 F.2d 1433, 1443 (2d. Cir.1991). In particular, where a history of legal violations is before the district court, that court has significant discretion to conclude that future violations of the same kind are likely. See Henrietta D., 331 F.3d at 290. "Courts are free to assume that past misconduct is highly suggestive of the likelihood of future violations." United States v. Carson, 52 F.3d 1173, 1184 (2d Cir.1995) (internal quotation marks omitted).
 
 
 59
 In the instant case, there was ample evidence before the district court of prior violations of plaintiffs' fair hearing rights. Indeed, defendants do not seriously dispute that, at the outset of this litigation (during the 1997-98 HEAP program year), over 5,000 New York City HEAP applicants were deprived of the ability to seek a fair hearing. See Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1(a), ¶ 75(d), No. 98 CIV 7734, Kapps v. Wing, 283 F.Supp.2d 866 (E.D.N.Y.2003).
 
 
 60
 Nor, as the district court observed, have defendants ever argued that they have eliminated the practice of issuing HEAP notices so late in the HEAP season as to foreclose claimants from seeking a fair hearing.[26] Kapps, 283 F.Supp.2d at 882. While defendants' efforts to improve their processing times are admirable, they do not eliminate the likelihood that some class members will be deprived of their fair hearing rights. Given this fact, the fair hearing injunctive relief awarded by the district court was appropriate.
 
 
 61
 
 b) Notice Relief
 
 
 
 62
 In addition to awarding fair hearing relief, the district court found the defendants' HEAP eligibility notices to be constitutionally inadequate. See Kapps, 283 F.Supp.2d at 878. Specifically, the court found that the defendants violated the requirements of due process by their failure to provide budgetary information[27], or other information which was sufficiently detailed as to allow HEAP applicants to understand the reasons for the defendants' benefits determination. Id. The defendants contend that existing HEAP notices are sufficient, or that, at a minimum, genuine issues of material fact exist as to whether more detailed notices were warranted.
 
 
 63
 In order to be constitutionally adequate, notice of benefits determinations must provide claimants with enough information to understand the reasons for the agency's action. See Goldberg, 397 U.S. at 267-68, 90 S.Ct. 1011; see also Escalera v. New York City Hous. Auth., 425 F.2d 853, 862 (2d Cir.1970). This requirement, like the right to a fair hearing, is a basic requirement of procedural due process. Claimants cannot know whether a challenge to an agency's action is warranted, much less formulate an effective challenge, if they are not provided with sufficient information to understand the basis for the agency's action. See, e.g., Vargas v. Trainor, 508 F.2d 485, 490 (7th Cir.1974). Thus, in the absence of effective notice, the other due process rights afforded a benefits claimant — such as the right to a timely hearing — are rendered fundamentally hollow. See Escalera, 425 F.2d at 862 (noting that a hearing would be of little value if the defendant could deny the claimants benefits based on reasons of which the claimants had no knowledge).
 
 
 64
 While claimants must, therefore, be afforded enough information to understand the basis for the agency's action in all instances, the specific type of notice required will vary depending on the circumstances of each given case. Under Mathews v. Eldridge, the cost to the government, the claimant's interest, as well as the availability of alternative means of obtaining information, must all enter into the analysis. See Mathews, 424 U.S. at 335, 96 S.Ct. 893; see also Henry v. Gross, 803 F.2d 757, 767-68 (2d Cir.1986) (applying Mathews v. Eldridge in determining whether improved notice was constitutionally required). As a result, what may be constitutionally required in one context, may not be in another.
 
 
 65
 In the instant case, the defendants suggest that two factors rendered the district court's award of notice relief improper: 1) the allegedly prohibitive cost of providing the notice mandated by the district court; and 2) the availability to claimants of additional means of seeking out information.[28] For the reasons set forth below, we disagree.
 
 
 66
 1) The Cost of Providing the Notice Mandated by the District Court
 
 
 67
 Much of the defendants' arguments against notice relief focus on the allegedly prohibitive cost of providing additional budgetary information. Specifically, the defendants allege that the cost of manually mating budgetary information to automatically generated notices would be exorbitant, and that the district court's conclusion that budgetary information could easily be included in the automated system (thus obviating the need for such manual pairing) was based on "pure speculation." Defendants also assert that the existence of "alternative certifiers," who do not have access to the state's automated notice system, makes the giving of improved notice expensive and impracticable.
 
 
 68
 Under Mathews, the cost to the defendants of providing improved notice is a relevant consideration. See Mathews, 424 U.S. at 335, 348, 96 S.Ct. 893. And we have, at times, relied on that consideration to place limits on the scope of due process notice relief. See, e.g., Henry, 803 F.2d at 768. Where we have done so, however, there has been a well-supported factual basis in the record for concluding that costs of more detailed notice would in fact be unduly burdensome. See, e.g., id. (noting that "[t]he city demonstrated a significant administrative difficulty in including individualized information in each notice of intent.")
 
 
 69
 Here, there is no evidence in the record from which we can conclude that the burden of affording improved notice would be unreasonable. The City Defendants' primary information technology expert, the Director of New York City's Office of Systems Development[29], testified in deposition that the HEAP computer system could be modified appropriately in 7-10 months, at the relatively modest cost of $75,000.[30] Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1(a), ¶¶ 120 n. 145, 144, No. 98 CIV 7734, Kapps v. Wing, 283 F.Supp.2d 866 (E.D.N.Y.2003). And, the defendants have not identified any evidence to the contrary that was introduced below. Under the circumstances, the district court properly concluded that the expense of automatically including budgetary information in HEAP notices would not be unduly high.
 
 
 70
 Nor is defendants' alternative contention — that the existence of alternative certifiers renders providing budgetary information impracticable — supported by the record. The record makes clear that while alternative certifiers continue to play some role in processing HEAP applications, they are no longer responsible for providing benefits notices. As a result, the ability of such certifiers to access the state's automated notice system is not relevant to the determination of whether providing additional budgetary information is feasible.[31]
 
 
 71
 2) The Availability to Claimants of Additional Means of Seeking Out Information
 
 
 72
 As the defendants point out, existing HEAP notices inform claimants that they may seek out additional information about their HEAP eligibility in a number of ways. Thus, for example, existing notices provide claimants with a number to call, and inform claimants of the availability of meetings with benefits specialists. See Ex. B to Plaintiff's Class Action Complaint, Kapps v. Wing, 283 F.Supp.2d 866 (E.D.N.Y.2003). In addition, HEAP notices indicate that plaintiffs can access their case record, and may be able to obtain copies of certain documents in that record. Id. Defendants contend that these alternate means of securing adequate information weigh heavily, under the second Mathews factor, in favor of finding the defendants' HEAP notice scheme to be constitutionally adequate.
 
 
 73
 The existence of alternate state procedures, which protect against a deprivation of due process, is without doubt relevant to, and may even be dispositive of, the Mathews v. Eldridge inquiry. See, e.g., NOW, 261 F.3d at 167-68; Henry, 803 F.2d at 768. This is particularly so where the plaintiffs' preferred procedures would impose a significant additional cost burden on the state. See, e.g., id. Where such a cost burden is likely, and the preferred procedure seems unlikely to constitute a material improvement over existing state processes, we are unlikely to find a due process violation. See id.
 
 
 74
 Here, however, the addition of budgetary information to HEAP notices does not entail the placing of a major financial burden on the defendants. And, the addition of such information will, in all probability, increase significantly the ability of HEAP claimants to determine accurately whether an administrative appeal is warranted. As noted by the Seventh Circuit in a comparable context, it is common sense that a scheme which relies on beneficiaries to seek out basic information on why the agency took the action it did will result in "only the aggressive receiv[ing] their due process right to be advised of the reasons for the proposed action." See Vargas, 508 F.2d at 490; see also Dilda v. Quern, 612 F.2d 1055, 1057 (7th Cir.1980) (per curiam) (applying Vargas to require budgetary information to be included in benefits notices). "The meek and submissive," in contrast, will "remain in the dark. . . ." Vargas, 508 F.2d at 490. Such an outcome seems particularly likely where, as here, many HEAP claimants face obstacles, such as advanced age, or disability, which make the process of seeking further information difficult. See, e.g., id.; Gray Panthers v. Schweiker, 652 F.2d 146, 168 (D.C.Cir.1981); see also Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 652-53 (2d Cir.1999).[32]
 
 
 75
 iii. Conclusion
 
 
 76
 For all of the foregoing reasons, we hold that the district court appropriately granted the plaintiffs summary judgment on their due process claims.
 
 C. LIHEAA
 
 77
 The LIHEAA indicates that states must "provide an opportunity for a fair administrative hearing to individuals whose claims for assistance . . . are denied or are not acted upon with reasonable promptness." 42 U.S.C. § 8624(b)(13). The district court concluded that this requirement is enforceable by a suit brought pursuant to 42 U.S.C. § 1983, see Kapps, 283 F.Supp.2d at 880, and is violated insofar as the plaintiffs are foreclosed from seeking a fair hearing by the operation of the 105 day rule. See id. at 881. It therefore awarded injunctive and declaratory relief to the plaintiffs on this statutory basis as well as on the previously discussed due process grounds. See id. at 881-83. On appeal, the defendants do not contest that § 8624(b)(13) of the LIHEAA requires them to provide fair hearings, but argue that the provision is not enforceable privately through § 1983 suits.
 
 
 78
 The question of whether § 8624(b)(13) of the LIHEAA creates rights that are enforceable under § 1983 is not an easy one. On the one hand, as the plaintiffs point out, § 8624(b)(13) has many of the characteristics that the Supreme Court has identified as important to the creation of privately enforceable statutory rights. See, e.g., Wright v. Roanoke Redev. & Hous. Auth., 479 U.S. 418, 430, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 509, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); Blessing v. Freestone, 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); see also Marshall v. Switzer, 10 F.3d 925, 929 (2d Cir.1993). On the other hand, the Court has appeared to be increasingly reluctant to find § 1983-enforceable rights in statutes which, like the LIHEAA, set forth their requirements in the context of delineating the obligations that accompany participation in federal spending clause programs. See, e.g., Suter v. Artist M., 503 U.S. 347, 358, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992); Gonzaga Univ. v. Doe, 536 U.S. 273, 280, 287, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). In the aftermath of the Court's decision in Gonzaga University, our circuit has not yet established a unified approach to provisions contained in spending clause statutes such as the LIHEAA. Compare Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 786 (2d Cir.2002) (finding, post-Gonzaga, that § 1232g(a) of the Family Educational Rights and Privacy Act did not create § 1983 enforceable rights), with Rabin v. Wilson-Coker, 362 F.3d 190, 202 (2d Cir.2004) (finding that § 1396r-6 of the Medicaid Act did create § 1983 enforceable rights).
 
 
 79
 Given the difficulty of the question, and the fact that the district court's ruling on the LIHEAA / § 1983 issue was not necessary to its grant of injunctive relief, we decline to decide at this time whether § 8624(b)(13) creates privately enforceable rights. Accordingly, we vacate that portion of the district court's declaratory judgment which pertained to § 8624(b)(13) relief. We do so without prejudice to the plaintiffs raising § 8624(b)(13) before the district court in the future, should it become apparent that the due process basis for the injunction is inadequate to afford the plaintiffs full relief.
 
 III. CONCLUSION
 
 80
 We hold that the plaintiffs possess a property interest in the receipt of HEAP benefits, and that the defendants' current procedures are not adequate to protect that interest. We therefore AFFIRM the judgment of the district court, insofar as it granted the plaintiffs declaratory and injunctive relief on their due process claims. We VACATE those portions of the district court judgment relating to defendants' violations of § 8624(b)(13) of the LIHEAA, without prejudice to the plaintiffs seeking further relief pursuant to § 8624(b)(13), should it become apparent that such relief is necessary.
 
 
 
 Notes:
 
 
 [1]
 Because we do not reach the issue of whether the LIHEAA creates individually enforceable rights, we vacate those portions of the district court's judgment which relate to defendants' violations of the LIHEAA
 
 
 [2]
 States may also subsidize the air conditioning costs of low-income familiesSee Marbley, 57 F.3d at 227.
 
 
 [3]
 Both "categorically eligible" and "income tested" households can be deemed HEAP ineligible for a number of other reasons, including the type of residence in which they reside, the immigrant composition of the household, and the household's lack of direct responsibility for heating costsSee N.Y. Comp.Codes R. & Regs. tit. 18, § 393.4(c)(3), (4). These eligibility bars are not at issue in this litigation.
 
 
 [4]
 A household's "energy burden ratio" is calculated by dividing the household's total annual energy costs by its annual income. "Vulnerable" household members include individuals who are a) "under age eight"; b) "age 60 or older"; or c) "permanently disabled."See N.Y. Comp.Codes R. & Regs. tit. 18, § 393.3(b).
 
 
 [5]
 Prior to August 19, 2002, state regulations mandated that all HEAP applications be processed within 30 calendar daysSee N.Y. Comp.Codes R. & Regs. tit. 18, § 393.5(a) (2001). In addition, for program years 1997-98, 1998-99, and 1999-2000, state HEAP manuals authorized local social service districts to delay processing applications for up to 60 days.
 
 
 [6]
 The New York City Department of Social Services serves as the Social Service district for the city of New York
 
 
 [7]
 Jerry Cammarata replaced Martin Oesterreich as the Commissioner of the DYCD during the pendency of this litigation
 
 
 [8]
 The plaintiff class, as certified by the district court, includes:
 . . . [A]ll New York City households who will apply or have applied for HEAP benefits since November 17, 1997 who were not or in the future will not be:
 a.) mailed a notice of HEAP eligibility within the time specified in state regulations;
 b.) mailed notice of HEAP eligibility which includes an explanation of how financial eligibility and benefit amount were calculated when eligibility was based on a budget calculation; and
 c.) afforded 60 days within which to request a fair hearing.
 Kapps, 283 F.Supp.2d at 871-72.
 
 
 [9]
 No party has appealed the district court's grant of class certification, or those parts of the court's judgment granting summary judgment to the defendants. We, therefore, do not address those aspects of the district court's holding
 
 
 [10]
 InQuern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court affirmed the appropriateness of awarding notice relief as ancillary to an otherwise appropriate grant of declaratory and injunctive relief against state actors. In this case, the Quern notice approved by the district court informed class members of the district court's holding, and notified them that they might be able to appeal prior years' determinations through the state fair hearing process.
 
 
 [11]
 Although the various defendants have raised somewhat different arguments in the context of this appeal, for the purposes of linguistic simplicity we refer to their arguments collectively as "defendants' arguments."
 
 
 [12]
 See, e.g., Basciano v. Herkimer, 605 F.2d 605, 609 (2d Cir.1978) (finding that New York City's administrative code created a property interest in accidental disability retirement benefits because applicants fulfilling eligibility criteria were entitled to an award of benefits); see also Goldberg, 397 U.S. at 262 & n. 8, 90 S.Ct. 1011 (observing that where welfare benefits are a matter of statutory entitlement they are protected by due process); cf. United States v. Abuhamra, 389 F.3d 309, 319 (2d Cir.2004) (finding a limited liberty interest in bail release for a post-verdict defendant under a statutory scheme providing that a "judicial officer shall order the release of the person" if specified criteria have been established, see 18 U.S.C. § 3143(a)).
 
 
 [13]
 While the income level eligibility criteria for "income tested households" are redefined on an annual basis, they are, within the context of any given program year, fixedSee N.Y. Comp.Codes R. & Regs. tit. 18, § 393.4(c)(2). So, for example, under the proposed 2005 HEAP program plan, all households with income less than the greater of 150% of the OBM poverty level or 60% of the state median income will be eligible for regular HEAP benefits. See Proposed 2005 New York State HEAP Plan, Attachment I at 8, available at <http:// www.otda.state.ny.us/otda/heap/2005_STATE_PLAN-Attachment1.pdf> (last visited March 22, 2005).
 
 
 [14]
 There is some ambiguity in our decisions as to whetherYale Auto Parts's "certainty or . . . very strong likelihood" test applies outside of the land use context in which it originated. See, e.g., Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503-04 (2d Cir.2001) (noting that "[w]e apply a strict `entitlement test' in land use regulation cases" and quoting Yale Auto Parts's "certainty or . . . very strong likelihood" language as setting the applicable standard) (emphasis added); Zahra v. Town of Southhold, 48 F.3d 674, 680 (2d Cir.1995) (similar); but cf. Colson, 35 F.3d at 108-09 (in a public welfare benefits case, citing Yale Auto Parts's "certainty or . . . very strong likelihood" language as the relevant standard). Because we conclude that where, as here, a benefit is made a matter of entitlement, due process protections attach — and do so irrespective of Yale's standard — we need not resolve this ambiguity in our circuit's decisions.
 
 
 [15]
 While the named plaintiffs were all adjudged eligible in the past, this is not necessarily true of the class as a whole, which was certified to include all households "who have applied or will apply for HEAP benefits. . . ."Kapps, 283 F.Supp.2d at 871-82. Under the circumstances, it is particularly important that we explain why an applicant for benefits may possess a property interest regardless of whether he or she has received benefits in the past.
 
 
 [16]
 Fulfilling the technical requirements for HEAP eligibility does not, in all circumstances, create an entitlement to HEAP benefits under New York law. Where federal program funds have been exhausted, individuals who fulfill the technical requirements for HEAP eligibility cannot be certified as eligible for, and entitled to receive, HEAP benefitsSee N.Y. Soc. Serv. L. § 97[2]. They therefore will not be entitled to receive HEAP benefits, despite technically fulfilling the HEAP eligibility criteria.
 
 
 [17]
 The district court, in its substantive discussion of plaintiffs' property interest, very clearly limited its finding of a property interest to circumstances where federal LIHEAA funds remain availableSee Kapps, 283 F.Supp.2d at 875 (finding that the plaintiffs have a due process protected property interest in HEAP benefits only "during any period for which federal HEAP funds remain available"). And, we do not understand plaintiffs to be challenging this aspect of the district court's decision on appeal. As such, we read the district court's award of declaratory and injunctive relief as placing limits on the operation of the HEAP program only insofar as LIHEAA program funds remain available, and need not address the question of whether a property interest could ever exist where program funds have been exhausted. See generally Colson, 35 F.3d at 109 (concluding that plaintiffs did not possess a protected property interest in receiving program benefits, where: a) the program was contingent on funds, b) the program had never been funded, and c) the state was afforded significant discretion under the statute in expending whatever program funds were made available).
 
 
 [18]
 Because New York state itself recognizes the need for a post-determination fair hearing in order to ensure that mandated HEAP benefits reach eligible persons, it is hard to conceive of what governmental interest might be harmed by the district court's fair hearing requirement. Given that the defendants have alleged no such interest, we need not evaluate its adequacy
 
 
 [19]
 Because fair hearings are already available to most HEAP claimants, the district court's award of fair hearing relief was limited to requiring the prompt issuance of HEAP determination notices. The court thereby ensured that applicants would no longer be barred from challenging their eligibility determinations as a result of receiving notice of eligibility more than 105 days after the end of the program year, and that applicants would not be denied a full 60 days to seek a fair hearing by virtue of their notices being issued more than 45 days beyond the end of the program year
 
 
 [20]
 In order to ensure that HEAP claimants would have an adequate time frame within which to request a fair hearing, the district court required defendants to issue all HEAP notices at least 60 days prior to the last day on which hearings can be requestedSee Kapps, 283 F.Supp.2d at 877. Under state law, that date is 105 days after the close of the program year. See Section I. A., supra.
 
 
 [21]
 State defendants also suggest in passing that — in selecting state law's 60 day time frame as the amount of time that plaintiffs must have to request a fair hearing — the district court improperly ordered the defendants to comply with state lawSee generally Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that the Eleventh Amendment bars the federal courts from enjoining state actors to comply with state law). But, our circuit has held that where compliance with state law is required as a matter of federal law, Pennhurst poses no bar to injunctive relief. See, e.g., Mont v. Heintz, 849 F.2d 704, 710 (2d Cir.1988). Therefore, this aspect of the district court's injunction was proper.
 
 
 [22]
 Article 78 proceedings are a type of legal proceedings created by New York state law, which are generally used to challenge state action or inactionSee N.Y. C.P.L.R. § 7801 Practice Commentaries C7801:1.
 
 
 [23]
 Because the plaintiffs have not appealed this determination, we express no opinion on the merits of this aspect of the district court's holdingCompare NOW, 261 F.3d at 167 (expressing doubt that delays in adjudicating plaintiffs cause of action would constitute a deprivation of due process, but not reaching the issue), with Kelly v. Railroad Ret. Bd., 625 F.2d 486, 490-91 (3d Cir.1980) (finding that undue delay in processing of a plaintiff's benefits application violated due process).
 
 
 [24]
 Defendants — to the extent they comply with state law limitations on HEAP application processing times — will also automatically comply with the fair hearing component of the district court's injunction. Thus, the fair hearing component of the district court's ruling places no additional burden on the defendants beyond that already imposed under state law
 
 
 [25]
 As the defendants correctly note, if it was error for the district court to award injunctive relief, the court's award of declaratory relief would, under the Eleventh Amendment, also be barredSee Green v. Mansour, 474 U.S. 64, 71-72, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (holding that declaratory relief could not be awarded against the state where it was not accompanied by an award of prospective injunctive relief); see also Marbley, 57 F.3d at 233 (finding municipal defendants to be arms of the state in administering the HEAP program, and thus finding such defendants to be entitled to Eleventh Amendment immunity). As such, were we to conclude that the district court erroneously granted injunctive relief, the award of any relief on the fair hearing issue would have been error. But, in view of our determination, infra, that injunctive relief was appropriately awarded by the district court, the standard injunctive, declaratory, and notice relief granted by the court poses no Eleventh Amendment concerns. See Quern v. Jordan, 440 U.S. 332, 346, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); Mansour, 474 U.S. at 69-73, 106 S.Ct. 423.
 
 
 [26]
 The defendants also suggest in passing that injunctive relief was inappropriate as to defendant Cammarata, because the DYCD is no longer responsible for processing HEAP applications. The Department, however, continues to play a role in the processing of HEAP applications, as it accepts such applications for processing, and forwards them to the DSS. Accordingly, the Department was appropriately made subject to the district court's permanent injunctionCf. Vander Malle v. Ambach, 673 F.2d 49, 52-53 (2d Cir.1982) (concluding that it was appropriate to hold specific state entities responsible for violations of federal law, despite disputes among the defendants over which entity was ultimately responsible for the violations); Inmates of Suffolk County Jail v. Eisenstadt, 494 F.2d 1196, 1199 (1st Cir.1974) (same).
 
 
 [27]
 The district court ordered the provision of information about the agency's HEAP determination "in such detail as is necessary to permit a reasonable person to understand the basis for the agency's action, including: information about the household's annual income, annual energy costs, statewide energy cost standards, energy burden ratio, the presence of vulnerable household members, and income tier, as well as benefit computations in worksheet form."Kapps, 283 F.Supp.2d at 882. Like the parties, we refer to the totality of the additional information ordered by the district court as "budgetary information."
 
 
 [28]
 The defendants also suggest that the district court's award of summary judgment on this issue was inappropriate, since, they assert, the plaintiffs have not adduced adequate evidence to demonstrate that improved notice would increase the accuracy of benefits determinations. The HEAP notices used by the defendants, however, were facially insufficient to afford claimants an understanding of the reasons for the agency's decisionSee, e.g., Kapps, 283 F.Supp.2d at 878 (noting that the defendants' own employees were unable to discern, based on pre-injunction HEAP notices, what the basis for the agency's action was). In view of this, and given the high rate of reversal of agency determinations in HEAP appeals (55.3%), the district court properly concluded that better notice would improve the accuracy of HEAP benefits determinations.
 
 
 [29]
 The city defendants' brief indicates that this information was provided by a state official. However, it is apparent from the record that the deposition testimony with respect to this issue was given by a City officialSee Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1(a), ¶¶ 120 n. 145, 144, No. 98 CIV 7734, Kapps v. Wing, 283 F.Supp.2d 866 (E.D.N.Y.2003).
 
 
 [30]
 By comparison, in the three program years between 1997 and 2000, defendants carried forward an average of $10.6 million inunspent LIHEAA funds to the following program year.
 
 
 [31]
 Even if alternative certifiers continued to be directly involved in the provision of HEAP benefits notices, it is difficult to see how their inability to access the state's automated notice system would render the provision of budgetary information prohibitively expensive. Such certifiers would, according to the state, have to calculate benefits eligibility manually,and manually generate benefits eligibility notices, in any event. While it may significantly increase costs to pair manually generated benefits calculations to automatically generated eligibility notices, it is hard to see why it would be prohibitively costly to manually add information to a notice which is already generated manually.
 
 
 [32]
 Although we cannot agree with defendants that the alternate means provided for HEAP claimants to obtain information about their applications obviate the need in this case for the notice relief ordered by the district court, we recognize the value those alternative means have had for HEAP applicants who availed themselves of them. In particular, affording claimants the opportunity to meet in person with a benefits specialist seems likely to be quite helpful for those applicants who take the initiative to do so. For this reason, we urge defendants to maintain this option so that persons receiving the written notice ordered by the district court can continue to contact a benefits specialist to obtain clarifications and explanations for the written information provided to them